617 A.2d 80

**Sharon HOLLY, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 18, 1992.

Decided Nov. 13, 1992.

Petition for Allowance of Appeal Denied April 6, 1993.

John Stember, for petitioner.

Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Sharon L. Holly (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) denying Claimant unemployment compensation benefits for willful misconduct resulting in her discharge from employment.

Claimant was employed as a phlebotomist by St. Clair Hospital (Employer) from August 1981 through August 19, 1991. As a phlebotomist, Claimant was required to draw blood samples from specified patients, label the samples, record the taking of the samples into a computer, and then take the samples to the laboratory for analysis. Before performing the venipuncture,[1] Claimant was required to follow Employer's Patient Identification and Labeling of Specimens procedure.[2]

---

1. Venipuncture, as defined by Webster's Dictionary, is a surgical puncture of a vein especially for the withdrawal of blood or for intravenous medication.

2. PROCEDURE:
   *ID and Labeling of Specimens With MACS Blood Draw Labels:*
   1. MACS labels are used for patient identification, verification of orders and specimen labeling.
   2. At bedside, identify the patient by hospital arm band. Compare name and hospital number with MACS label. If any discrepancies are found, notify the head nurse or charge nurse. Identification errors

On August 19, 1991, Claimant performed a venipuncture on a patient and withdrew six vials of blood. Claimant labelled five vials correctly. After placing the final correct label on the sixth vial, Claimant also placed a label on this vial naming another patient. Claimant's error was discovered and brought to her attention by the Phlebotomy Supervisor. Because of Claimant's past disciplinary record for similar infractions she was immediately suspended pending investigation and ultimately discharged on August 26, 1991.[3] Claimant applied for unemployment compensation benefits. Finding that Claimant's conduct constituted willful misconduct, the Office of Employment Security (OES) found Claimant ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).[4] Claimant appealed, and the Referee, after a hearing reversed OES finding that the mislabelling was due to inadvertence. The

should also be reported to the phlebotomy supervisor and an incident report filed. DO NOT PERFORM VENIPUNCTURE UNTIL PROPER IDENTIFICATION IS MADE.

3. Perform venipuncture.

4. On far right label, record your tech code and time of collection....

(Emphasis in original.)

3. Claimant had been formally reprimanded for similar conduct on three prior occasions:

On February 20, 1986, claimant received a written disciplinary notice for failing to follow proper procedure for patient identification. This notice advised Claimant that future disciplinary action for similar conduct would be: 1) suspension; 2) discharge.

On July 3, 1989, claimant received a written disciplinary notice for labelling a specimen tube with incorrect patient information. Claimant was not suspended, but was again warned that future disciplinary action would be: 1) suspension; 2) discharge.

On June 17, 1991, claimant received a written disciplinary notice for failing to follow proper patient identification procedures. Claimant was suspended for three days and advised that future similar conduct would result in disciplinary action up to and including discharge.

4. Section 402(e) of the Law provides:

An employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act.

Employer then appealed to the Board, which, finding that Claimant's mislabelling was in direct violation of the Employer's Patient Identification policy, reversed the Referee and denied benefits. The instant appeal followed.[5]

■ Claimant contends that her conduct in mislabelling the sixth vial does not amount to willful misconduct but merely an inadvertent violation of Employer's Patient Identification procedure. For an employee to be found not eligible under Section 402(e) of the Law he or she must commit an act of wanton or willful disregard of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 83–84, 351 A.2d 631, 632 (1976). However, normally an inadvertent violation of an employer's rule will not constitute willful misconduct. *Morysville Body Works, Inc. v. Unemployment Compensation Board of Review*, 54 Pa.Commonwealth Ct. 6, 419 A.2d 238 (1980).

■ In determining what is willful misconduct we have recognized that the nature of certain occupations requires that employers expect a high standard of behavior from employees performing essential functions. Otherwise, the employer's effective operation might be jeopardized and the public placed at risk. To determine whether an employee's conduct amounted to willful misconduct an evaluation must be made both as to the reasonableness of the employee's actions and the reasonableness of the employer's rules in light of all the

5. Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, an error of law was made or constitutional rights were violated. *Southeastern Pennsylvania Transportation Authority v. Unemployment Compensation Board*, 106 Pa.Commonwealth Ct. 16, 525 A.2d 458 (1987). Whether specific conduct rises to the level of willful misconduct is a question of law, and subject to our review. *Myers v. Unemployment Compensation Board of Review*, 88 Pa.Commonwealth Ct. 399, 490 A.2d 18 (1985). The employer has the burden of proving that the employee's misconduct was willful. *Saxton v. Unemployment Compensation Board of Review*, 71 Pa.Commonwealth Ct. 636, 455 A.2d 765 (1983).

circumstances. *Frumento* 466 Pa. at 87, 351 A.2d at 634. This balancing of interests would include considering the nature of the employer's business and its effect on the public.

As to health care workers, we have held that because of the duty owed by hospitals to their patients, hospital employers may hold employees whose functions are related to that duty to a high standard of behavior, so that inadvertent mistakes may amount to willful misconduct. *Myers v. Unemployment Compensation Board of Review,* 88 Pa.Commonwealth Ct. 399, 490 A.2d 18 (1985); *Philadelphia Geriatric Center v. Unemployment Compensation Board of Review,* 46 Pa.Commonwealth Ct. 357, 406 A.2d 1177 (1979). Recognizing that our case law has for health care workers, and certain other professionals, applied a higher standard of care which refuses to recognize inadvertence as a defense to an employer rule violation, Claimant asks us to reconsider this standard. Claimant asserts that applying this higher standard effectively removes the willful component of Section 402(e) of the Law.

In *Philadelphia Geriatric* we explained why non-intentional actions can be willful misconduct and why inadvertence is not normally a defense for health care workers. We noted that:

a hospital may rightfully expect its employees to carry out their duties, and has recognized the need of health care professionals to be able to rely upon the record of medications and treatments administered to each patient. Performing prescribed treatments and correctly marking charts are vital components of a [health care worker's] obligation to her employer and to her patients. Any failure to perform those functions is a sufficiently serious offense to constitute willful misconduct. (Citations omitted.)

*Id.* at 362, 406 A.2d at 1179–1180; *see also Myers.* Because of the continued validity of this rationale, we decline to reexamine the higher standard we applied to health care workers.[6]

6. We have also denied unemployment compensation for mere inadvertence where the employee's duties involved significant consequences if not performed correctly. For example, in cases involving law enforcement officers we stated that, the employer may expect a high standard

In this case, Claimant was an experienced phlebotomist fully aware of Employer's Patient Identification procedure. Claimant's violation of that procedure had the possibility of causing the patient to undergo additional unnecessary tests, or unnecessary treatments, with Employer possibly incurring liability for any detrimental effects suffered by the patient. The Board, considering all the surrounding circumstances, properly determined that, as a health care professional, Claimant's misidentification of a patient's blood sample constituted willful misconduct.

Even if we did not apply the higher standard for health care workers, Claimant has not shown mere inadvertence in a single incident.[7] Claimant was warned twice that further violations of Employer's Patient Identification procedure would lead to suspension and then discharge. After a third violation, Claimant was suspended and warned that future disciplinary action included possible discharge. Two

of behavior from the officer because of the nature of law enforcement. *See Lower Gwynedd Township v. Unemployment Compensation Board of Review*, 44 Pa.Commonwealth Ct. 646, 404 A.2d 770 (1979); *Verner v. Unemployment Compensation Board of Review*, 80 Pa.Commonwealth Ct. 138, 471 A.2d 139 (1984). However, we limited application of this high standard to conduct related to the employer's essential function. *Verner.* We distinguished between behavior that could potentially impair an employer's performance of essential functions and incidental behavior lacking that potential. Only in the former would the high standard of behavior govern.

7. We agree with Claimant that based on a single incident Employer could not have found that her error amounted to willful misconduct. This is because Employer's past disciplinary measures had established a work rule which required more than a single violation before discharge for willful misconduct. *PMA Reinsurance Corporation v. Unemployment Compensation Board of Review*, 126 Pa.Commonwealth Ct. 94, 558 A.2d 623 (1989). Once an employer has established policies that indicate the accepted standard of behavior, the employee is entitled to rely on those policies. *Lyons v. Unemployment Compensation Board of Review*, 111 Pa.Commonwealth Ct. 417, 533 A.2d 1144 (1987).

When Claimant first violated Employer's procedure she was not immediately discharged, instead, she was made subject to progressive disciplinary measures that informed her that future violations could result in suspension and then discharge. Under these circumstances Employer had established a work rule that a single violation of the Patient Identification procedure would not result in discharge for willful misconduct.

months later the incident in question occurred and Claimant was discharged. There was an employer procedure that Claimant was aware of but violated, she was disciplined for her violations and warned that she was subject to discharge for future violations. The record established that there was an increasing pattern of conduct on the part of Claimant with the last three incidents occurring in a thirteen month time period, and the last two incidents only two months apart.

When an employer has promulgated policies indicating the accepted standard of behavior, the employer is indicating that violations of those standards, without good cause, would be considered willful misconduct. *Unemployment Compensation Board of Review v. Schmid,* 20 Pa.Commonwealth Ct. 286, 341 A.2d 553 (1975). In cases where the employee has been warned and/or reprimanded for prior similar conduct a determination that the employee has engaged in disqualifying willful misconduct is especially warranted. *Department of Transportation v. Unemployment Compensation Board of Review,* 84 Pa.Commonwealth Ct. 364, 479 A.2d 57 (1984); *see also Goodman v. Unemployment Compensation Board of Review,* 83 Pa.Commonwealth Ct. 134, 476 A.2d 510 (1984). Thus, the Board could determine that the final incident of mislabelling amounted to willful misconduct, because of Claimant's knowledge of Employer's procedure and repeated failure to comply with the procedure despite progressive discipline.

Accordingly, because there is substantial evidence that Claimant's final violation of Employer's policy constituted willful misconduct, the decision of the Board denying Claimant benefits is affirmed.

## ORDER

AND NOW, this 13th day of November, 1992, the order of the Unemployment Compensation Board of Review, Decision No. B–295344, dated December 20, 1991, is affirmed.