UNITED REFINING COMPANY,
Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 5, 1995.
Decided July 13, 1995.

Robert L. Byer and Michael A. Pavlick, for petitioner.

Irene M. Bizzoso, Asst. Counsel, for respondent.

Before COLINS, President Judge, and KELLEY, J., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

United Refining Company (Employer) appeals from an order of the Unemployment Compensation Board of Review (Board) reversing a referee's decision and order denying unemployment compensation benefits to Charles E. Vermilyea (Claimant).

Claimant worked for Employer as a "Pumper II." He was discharged from this position on October 26, 1993 and thereafter applied for compensation benefits with the Warren Job Center. Benefits were denied on November 11, 1993 on the basis of Claimant's willful misconduct in failing to follow proper operating procedures mandated by Employer.[1] Claimant appealed the job center's determination to the referee and a hearing was held on December 28, 1993.

At the hearing, Employer presented the testimony of Bruce Phillips, its Assistant Refinery Manager in charge of operations. Phillips testified that Claimant was terminated for not following Employer's written policies and procedures regarding the draining of water from its oil tanks. Specifically, he explained, Claimant was terminated following his failure to properly secure a valve on an oil tank from which he had been draining water, which, in turn, caused several thousand gallons of oil to spill from the tank and into Employer's waste water treatment system. Phillips stated that because of prior incidents where oil had been spilled, Employer implemented the security system which was in place when the incident involving Claimant occurred. This system, Phillips explained, required employees to obtain a key from a security officer which could then be used to open a drain valve on the oil tanks so that water could be drained from the tanks. Once the tank was drained of water, the valve was to be closed and locked with the key, and the key was to be returned to security thereafter. Phillips further testified that as a result of the spill which Claimant caused, Employer was put out of compliance for its oil and grease reports. Phillips also noted that Employer had to pay fines based upon the environmental impact of the spill and that Employer incurred the cost of cleaning the spill area.

The referee affirmed the job center's decision on January 6, 1994 concluding that Claimant engaged in disqualifying willful misconduct. Claimant then appealed to the Board which entered the following findings:

1. Claimant was last employed as a Pumper II by the United Refining Co. from June 5, 1978 at a final rate of $15.50 per hour and his last day of work was October 26, 1993.

2. The claimant, who has been a Pumper for approximately six years, was familiar with the employer's policy concerning pumping water from the tanks.

3. The procedure and the policy is that authorized employees must report to security and sign out a key to unlock the lock and chain on the drain valve.

4. After removing water from the tank, they must close the valve and chain lock the valve.

5. The disciplinary action for failing to close and lock the valve is up to and including discharge.

6. On October 26, 1993, the claimant went to security and secured the key for draining the tanks, but did not personally sign out the key.

7. The claimant drained water from a tank holding diesel fuel and, when finished, chained and locked the valve in the open position.

....

1. Section 402(e) of the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e), provides, in pertinent part, as follows:

An employee shall be ineligible for compensation for any week—

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, ...

8. The tank continued to drain spilling 2,000 to 4,000 gallons of diesel fuel.

9. Two other employees broke the chain and closed the valve.

10. The claimant, on September 13, 1993 received a twelve day suspension after causing a tank car to overflow 200 gallons.

11. The claimant was made aware at this time that any future incidents could result in termination.

12. The claimant was discharged by the employer on October 26, 1993 for causing loss of product and environmental damage.

(R.R. 54–55a).

The Board reversed the referee's order on April 1, 1994, concluding that because Claimant's act was merely negligent, Employer failed in its burden of demonstrating that Claimant's conduct was of an intentional or deliberate nature.

■■ On appeal to this Court,[2] Employer raises the following question for our review:

Did the Unemployment Compensation Board of Review err as a matter of law by concluding that an oil refinery employee, who, in violation of a work policy, caused an oil spill by failing to close the drain valve on an oil tank from which he was drawing water, was not guilty of willful misconduct under Pennsylvania's Unemployment Compensation Law because there was no competent evidence that the employee acted intentionally or deliberately?

We believe the Board did err and accordingly we reverse its order granting Claimant benefits.

■■■ We note that the burden of proving willful misconduct is upon the employer. *Lake v. Unemployment Compensation Board of Review*, 48 Pa.Commonwealth Ct. 138, 409 A.2d 126 (1979). For behavior to constitute willful misconduct, said behavior must evidence (1) a wanton and willful disregard of the employer's interest, (2) a deliberate violation of work rules, (3) a disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful disregard for the employer's interests or the employer's duties or obligations. *Kentucky Fried Chicken v. Unemployment Compensation Board of Review*, 10 Pa.Commonwealth Ct. 90, 309 A.2d 165 (1973).

■ Where an employee has been discharged based upon his willful misconduct in violating a work rule of the employer, the burden is on the employer to establish both the existence of a reasonable work rule and its violation. *Brunson v. Unemployment Compensation Board of Review*, 131 Pa.Commonwealth Ct. 462, 570 A.2d 1096, *appeal denied*, 527 Pa. 603, 589 A.2d 693 (1990). Once the employer proves the existence of a rule, its reasonableness, and the fact of its violation, the burden of proof shifts to the claimant to prove that he had good cause for his action. *Connelly v. Unemployment Compensation Board of Review*, 68 Pa.Commonwealth Ct. 635, 450 A.2d 245 (1982).

While this Court has held that, normally, inadvertent, non-intentional violations of an employer's work rules will not constitute willful misconduct, e.g., *Morysville Body Works, Inc. v. Unemployment Compensation Board of Review*, 54 Pa.Commonwealth Ct. 6, 419 A.2d 238 (1980) (an employee who inadvertently punched another employee's time card in violation of employer's rule did not commit willful misconduct); *Myers v. Unemployment Compensation Board of Review*, 533 Pa. 373, 625 A.2d 622 (1993) (a truck driver who was involved in three traffic accidents within six-month period did not commit willful misconduct as his unintentional conduct merely demonstrated that he was not a good truck driver),[3] we have created an exception to this

---

**2.** Where, as here, the party bearing the burden of proof does not prevail before the Board, our scope of review is limited to determining whether the Board capriciously disregarded competent evidence or whether an error of law was committed. *Dunkle v. Unemployment Compensation*

*Board of Review*, 91 Pa.Commonwealth Ct. 1, 496 A.2d 880 (1985).

**3.** *See also Heitczman v. Unemployment Compensation Board of Review*, 162 Pa.Commonwealth Ct. 275, 638 A.2d 461, *petition for allowance of appeal denied*, 538 Pa. 660, 648 A.2d 791 (1994),

general rule where an employee's conduct could jeopardize an employer's effective operations or place the public at risk. For example, in the case of *Holly v. Unemployment Compensation Board of Review*, 151 Pa.Commonwealth Ct. 450, 617 A.2d 80 (1992), *petition for allowance of appeal denied*, 534 Pa. 643, 626 A.2d 1160 (1993), we held that a phlebotomist's failure to label a patient's blood sample in accordance with hospital procedure constituted willful misconduct, even where the violation was inadvertent.

In *Holly*, we noted the following:

> In determining what is willful misconduct we have recognized that the nature of certain occupations requires that employers expect a high standard of behavior from employees performing essential functions. Otherwise, the employer's effective operation might be jeopardized and the public placed at risk. To determine whether an employee's conduct amounted to willful misconduct an evaluation must be made both as to the reasonableness of the employer's rules in light of all the circumstances. This balancing of interests would include considering the nature of the employer's business and its effect on the public.

*Holly*, 151 Pa.Commonwealth Ct. at 454, 617 A.2d at 83.

Because we had previously applied a "high standard of behavior" to health care workers whose conduct might jeopardize their employer's effective operation or place the public at risk, e.g., *Myers v. Unemployment Compensation Board of Review*, 88 Pa.Commonwealth Ct. 399, 490 A.2d 18 (1985) (nurse's inadvertent violation of employer's rule regarding the administering and logging of medication constituted "willful misconduct" disqualifying her from receiving benefits); *Philadelphia Geriatric Center v. Unemployment Compensation Board of Review*, 46 Pa.Commonwealth Ct. 357, 406 A.2d 1177

(1979) (nurse's non-intentional mistake in charting a treatment she failed to administer constituted willful misconduct), we concluded that the facts of *Holly* warranted application of said "high standard of behavior" and accordingly, we denied the claimant in *Holly* benefits. Likewise, we have applied this "high standard of behavior," to law enforcement officers where their inadvertent, nonintentional conduct could jeopardize their employer's essential functions. *See Lower Gwynedd Township v. Unemployment Compensation Board of Review*, 44 Pa.Commonwealth Ct. 646, 404 A.2d 770 (1979); *Verner v. Unemployment Compensation Board of Review*, 80 Pa.Commonwealth Ct. 138, 471 A.2d 139 (1984).

Based on the foregoing, it is evident that this Court has carved out an exception, based on a case by case analysis, to the general rule that inadvertence is a defense to an employee's violation of an employer's work rules. In analyzing the facts of this case in relation to this exception, we find that here too Employer had the right to expect a "high standard of behavior" from its employees such that even Claimant's inadvertent, nonintentional conduct in causing an oil spill constituted willful misconduct. The undisputed facts establish that Employer implemented an extensive written lock and key policy which applied to employees drawing water from its oil tanks, that Claimant was aware of this policy and that Claimant violated said policy without justification causing some 2,000 to 4,000 gallons of diesel fuel to spill. Furthermore, the undisputed evidence demonstrates that Employer was made to pay fines based upon the negative environmental impact caused by the oil spill and incurred the expense of having to clean up the spill. Thus, we conclude that Claimant's negligent conduct in causing an oil spill placed Employer in a position where its effective operation might be jeopardized and could possibly place the public at risk.[4] Accordingly, as

---

which distinguished the inadvertence and negligence in *Morysville* from the disobedience of a direct instruction, namely, an employee's failure to walk around a truck before he backed it up, resulting in an accident.

4. We note that the foregoing cited cases demonstrate that the public need not actually be placed at risk by a claimant's inadvertent conduct for such conduct to constitute willful misconduct; to the contrary, the cases demonstrate that the possibility of such a risk is enough to warrant the higher standard of behavior discussed herein.

Claimant's conduct constituted disqualifying willful misconduct, we reverse the Board's order to the contrary.

### ORDER

AND NOW, this 13th day of July, 1995, the order of the Unemployment Compensation Board of Review dated April 1, 1994 is reversed, and benefits are denied.