**Gary K. ALTEMUS, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 10, 1996.

Decided Aug. 26, 1996.

---

John D. Sisto, for Petitioner.

Alex E. Echard, for Intervenor, Forest Hills School District.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Claimant Gary K. Altemus petitions for review of the October 30, 1995 order of the Unemployment Compensation Board of Review (Board) affirming a referee's denial of unemployment compensation benefits to Claimant pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1] We affirm the Board's order.[2]

The Board found the following facts. Claimant worked as a science/geography teacher for Employer Forest Hills School District when, on May 5, 1993, he was involuntarily admitted to Memorial Hospital's Mental Health Facility after he made suicidal statements. (Findings of Fact Nos. 1 and 4.) For the rest of the 1992–93 school year, Claimant was placed on sick leave and unpaid leave. (Finding of Fact No. 5.)

On September 20, 1993, Claimant reported for work ten minutes late; during that time, Claimant's homeroom students were left unattended. (Finding of Fact No. 6.) Subsequently, Claimant's supervisor advised Claimant that, in the future, if he was going to be late, he was to call so that his students would not be left unsupervised. (Finding of Fact No. 7.)

On November 1, 1993, Claimant was late for work but properly reported his tardiness. (Finding of Fact No. 8.) On December 2, 1993, Claimant failed to report for work or report off work. Claimant's supervisor contacted Claimant at approximately 8:05 a.m. and told him to report for work as soon as possible; Claimant arrived at 8:35 a.m. (Finding of Fact No. 9.)

On December 6, 1993, Claimant again failed to report for work or report off work. (Finding of Fact No. 10.) From December 7 through December 9, 1993, Claimant was absent from work due to kidney stones. (Finding of Fact No. 11.) Claimant was placed on administrative leave with pay through the end of December 1993; Claimant returned to work on January 3, 1994. (Finding of Fact No. 12.)

On January 7, 1994, Claimant was absent from work due to illness. (Finding of Fact No. 13.) On January 10, 1994, when the Learning Support Teacher made a simple request of Claimant concerning a student, Claimant went into an emotional tirade about "the place" and "where's it all gonna end." Claimant immediately apologized. (Finding of Fact No. 14.)

On January 24, 1994, Claimant was absent from work. (Finding of Fact No. 15.) On January 26, 1994, Employer received a letter from Claimant's attorney explaining that Claimant had been ordered to appear in Bedford County Court on January 24, 1994 and requesting that Claimant be granted a leave of absence for that date. (Finding of Fact No. 16.)

Employer learned thereafter that Claimant had been convicted on October 22, 1993 in Blair County on a driving under the influence (DUI) charge; Employer also learned that the cause of the January 24, 1994 court appearance was a 1993 arrest for DUI in Bedford County. (Finding of Fact No. 17.) Claimant also had a 1990 DUI conviction in Cambria County, the location of Forest Hills School District. (Finding of Fact No. 18.)

On January 28, 1994, Claimant began an approved sabbatical leave, which was to continue for the remainder of the school year. (Finding of Fact No. 19.) On July 28, 1994, Claimant was convicted on the DUI charge in Bedford County. (Finding of Fact No. 20.)

The Public School Code provides that immorality, incompetence, intemperance, cruelty, persistent negligence, or mental derangement shall be valid cause for termination of a contract with a professional employee.

---

1. Section 402(e) of the Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e), provides that a claimant shall be ineligible for compensation for any week in which his or her unemployment is due to discharge or temporary suspension from work for willful misconduct connected with the work.

2. This case was reassigned to the author on June 21, 1996.

(Finding of Fact No. 2.) Claimant was, or should have been, aware of these provisions. (Finding of Fact No. 3.)

When Claimant attempted to return to school for the Fall 1994 term, Employer began proceedings to discharge him. (Finding of Fact No. 21.) Employer discharged Claimant, effective October 24, 1994, for immorality and persistent neglect of duties.[3] (Finding of Fact No. 22.)

Claimant applied for unemployment compensation at the local job center, which denied Claimant benefits. Claimant appealed the determination, and a hearing was held before a referee. Upon consideration of the evidence, the referee affirmed the job center's determination. Claimant appealed to the Board, which remanded the case to a referee who, acting as hearing officer for the Board, held a remand hearing. At the Board's August 4, 1995 remand hearing, the parties agreed to submit as the record for the unemployment compensation proceeding the transcripts and exhibits from the arbitration case involving Claimant.

■ Subsequently, the Board affirmed the decision of the referee, concluding that Claimant's DUI convictions manifested a disregard for a standard of behavior which Employer could rightfully expect of a professional teacher. On appeal to this Court,[4] Claimant argues that the Board erred in concluding that his DUI convictions constitute willful misconduct connected with his work.[5] We disagree.

■ Willful misconduct is: (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; and (4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.[6] *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976). The employer has the burden of proving willful misconduct. *City of Beaver Falls v. Unemployment Compensation Board of Review*, 65 Pa.Cmwlth. 14, 441 A.2d 510 (1982).

■ In addition, the employer must show that the willful misconduct is connected with the employee's work. 43 P.S. § 802(e). As this Court stated in *Gallagher v. Unemployment Compensation Board of Review*, 36 Pa.Cmwlth. 599, 388 A.2d 785, 787 (1978):

An employer may require that [its] employees be exemplary citizens off the job as well as on. [The employer] may discharge them for failing to live up to this standard, unless restricted otherwise by contract provisions. However, acting in a manner meriting the employer's disapproval does not disqualify an employee from receiving unemployment compensation upon his discharge unless his dereliction is connected with his work.

This means that the employee's behavior must directly reflect upon the employee's ability to perform assigned duties. *Unemployment Compensation Board of Review v. Derk*, 24 Pa.Cmwlth. 54, 353 A.2d 915 (1976).

---

3. Although the Board found that Employer discharged Claimant, at least in part, for "persistent neglect of duties," we note that Section 1122 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1122, allows the termination of a contract with a professional employee because of "persistent negligence."

4. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. *Steinberg Vision Associates v. Unemployment Compensation Board of Review*, 154 Pa.Cmwlth. 486, 624 A.2d 237 (1993).

5. Claimant also contends that the Board erred in concluding that Claimant's absenteeism rose to the level of willful misconduct. However, the Board drew no such conclusion; rather, it affirmed the referee's decision based solely on Claimant's DUI convictions. (Board's Decision at 2.)

6. Whether an employee's conduct rises to the level of willful misconduct is a question of law subject to our review. *Reitmeyer v. Unemployment Compensation Board of Review*, 145 Pa. Cmwlth. 177, 602 A.2d 505 (1992).

■ Here, there is substantial evidence to support the Board's conclusion that Claimant's misconduct both at school and off duty was willful and that it directly affected his ability to teach in the public schools. It is undisputed that Claimant's employer, Forest Hills School District, discharged him after three incidents within seven years involving driving while under the influence. On the first occasion, Claimant received accelerated rehabilitative disposition (ARD) and on the second, a sentence of thirty days of inpatient treatment in lieu of incarceration. As for the third incident, a misdemeanor of the first degree, a minimum term of imprisonment of at least 90 days must be imposed under Section 3731(e)(1)(iii) of the Vehicle Code, 75 Pa.C.S. § 3731(e)(1)(iii).

In addition, there was unrebutted evidence from both teachers and students that Claimant was frequently late for work,[7] left the classroom more than other teachers,[8] and, on at least one occasion, appeared in a public place in front of students in an intoxicated condition following a week-night school dance.[9] Fellow teachers and staff members also testified as to several occasions when he was encountered, *at school,* with the odor of alcohol on his breath or on his person.[10]

Claimant testified that, after many of the dances he chaperoned, he and the other chaperons (fellow teachers and administrators) would go out for pizza and beer. (March 22, 1995 Arbitration Hearing, N.T. 182, R.R. 578a.) He did not deny that there were times that the odor of alcohol could have been on his breath at school. (March 22, 1995 Arbitration Hearing, N.T. 175, R.R. 571a.) In fact, he testified that any odor of alcohol probably was lingering from the prior evening's consumption. (*Id.*) Also, he testified that Mr. Prostejovsky, assistant principal and principal for many of the years that Claimant taught, advised him on various occasions that "you smell boozey this morning, you better chew gum or better get a mint." (March 22, 1995 Arbitration Hearing, N.T. 176–77, R.R. 572–73a.)

Under Section 1122 of the Public School Code of 1949,[11] valid causes for termination of a contract with a professional employe include intemperance. In *Belasco v. Board of Public Education,* 87 Pa.Cmwlth. 5, 486 A.2d 538, 541–42 (1985), *aff'd,* 510 Pa. 504, 510 A.2d 337 (1986), we stated that "a loss of self control . . . is the main element of intemperance." [12] Certainly, three incidents within seven years involving driving while under the influence manifest a loss of control.

Further, all of the above evidence, including that provided by Claimant, reflects on his ability to act as a role model for the school students whose morals and ideals he as a teacher is supposed to foster and elevate. *Balog v. McKeesport Area School District,* 86 Pa.Cmwlth. 132, 484 A.2d 198 (1984). The unrebutted evidence about a group of students at a local gas station/convenience store observing Claimant after a school dance apparently intoxicated and unable to work a public telephone indicates that at least some of the students were aware of his drinking. (February 14, 1995 Arbitration Hearing, N.T. 230–32, R.R. 287a–289a.)

In addition, there is established caselaw that holds teachers to a higher standard of conduct due to the nature of their position with students. *Reitmeyer v. Unemployment*

---

7. (Referee's February 6, 1995 Hearing, N.T. 30–32, R.R. 37–39a; February 14, 1995 Arbitration Hearing, N.T. 180–81, 264–66, 312, R.R. 237–38a, 321–13a, 369a.)

8. (February 6, 1995 Arbitration Hearing, N.T. 224, 226–27, 229, 271, 332, R.R. 281a, 283–84a, 286a, 328–29a, 389a; March 20, 1995 Arbitration Hearing, N.T. 48, R.R. 441a.)

9. (Referee's February 6, 1995 Hearing, N.T. 37, R.R. 44a; February 14, 1995 Arbitration Hearing, N.T. 219–22, 231, 234–25, R.R. 276–79a, 288a, 291–92a.)

10. (February 14, 1995 Arbitration Hearing, N.T. 169, 273, 280, 316–17; R.R. 223a, 330a, 337a, 373–74a.)

11. 24 P.S. § 11–1122.

12. Intemperance has been defined more fully as follows:
   Habitual intemperance is that degree of intemperance from the use of intoxicating drinks which disqualifies the person a great portion of the time from properly attending to business, or which would reasonably inflict a course of great mental anguish upon an innocent party. Black's Law Dictionary, Revised Fourth Edition.

*Compensation Board of Review*, 145 Pa. Cmwlth. 177, 602 A.2d 505 (1992) involved the dismissal of a teacher who had distributed racial hate literature to other teachers at school. In affirming the Board's denial of compensation to the claimant on the basis that his conduct constituted willful misconduct, we noted that "[a] school district justifiably expects its teachers to conduct themselves in such a way as to command the respect and good will of the community." *Id.* at 507.

In *Lesley v. Oxford Area School District*, 54 Pa.Cmwlth. 120, 420 A.2d 764 (1980), we held that a teacher's shoplifting constituted immorality that offended the morals of the community and set a bad example for youth. *See also School District of Philadelphia v. Puljer*, 92 Pa.Cmwlth. 329, 500 A.2d 905 (1985) (holding that the school board had discretion in deciding what conduct is improper for its employees who act as adult models for school children where school custodian was charged with possession of a controlled substance and received ARD and a non-reporting probation of six months.)

In the case before us, we conclude that Claimant's serious criminal conduct not only warranted termination by the school board, *Neshaminy Federation of Teachers v. Neshaminy School District*, 59 Pa.Cmwlth. 63, 428 A.2d 1023 (1981), *aff'd*, 501 Pa. 534, 462 A.2d 629 (1983); it also warranted denial of unemployment compensation benefits.

Accordingly, we affirm.[13]

---

**13.** In its brief, Employer requests that this Court remand this case to the Board to determine whether Claimant's *other* behavior constitutes willful misconduct connected with his work. In light of our determination, however, we need not address this.

**1.** Section 402(e) of the Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e), provides that a claimant shall be ineligible for compensation for any week in which his or her unemployment is due to discharge or temporary suspension from work for willful misconduct *connected with the work*. This means that the employee's behavior must *directly* reflect upon the employee's ability to perform assigned duties. *Unemployment Compensation Board of Review v. Derk*, 24 Pa.Cmwlth. 54, 353 A.2d 915 (1976).

**2.** Unfortunately, the Majority reaches beyond our scope of review here and discusses matters

## ORDER

AND NOW, this 26th day of August, 1996, the order of the Unemployment Compensation Board of Review, dated October 30, 1995, is hereby affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Because I do not believe that Gary K. Altemus's (Claimant) DUI convictions constitute willful misconduct *connected with his work* under section 402(e) of the Unemployment Compensation Law (Law),[1] I would reverse.

The Majority, in reaching a contrary result, states that the record contains substantial evidence to support the UCBR's conclusion "that Claimant's *misconduct both at school and off duty* was willful and that it directly affected his ability to teach in the public schools." (Majority op. at 870) (Emphasis added.) However, the UCBR did *not* draw such a conclusion; rather, the UCBR concluded: "Claimant's *multiple convictions for [DUI]* ... were in violation of the Pennsylvania School Code and were also a violation of the standards of behavior which a School District could rightfully expect of a professional teacher." (UCBR op. at 2; R.R. at 5a.) (Emphasis added.) Thus, our review of the UCBR's decision is necessarily limited to whether Claimant's *DUI convictions* constitute willful misconduct connected with his work.[2]

---

which are not pertinent. For example, the Majority suggests that Claimant did not exercise temperance and states that *intemperance* is a valid cause for termination of a professional employee. (Majority op. at 870.) However, Claimant was *not* terminated because of intemperance; in fact, the UCBR found that Claimant was terminated for immorality and persistent neglect of duties. (UCBR's Finding of Fact, No. 22.)

In addition, the Majority cites evidence from the record to show that: (1) Claimant was frequently late for work; (2) Claimant left the classroom more often than other teachers; (3) Claimant appeared intoxicated in a public place in front of students; (4) Claimant sometimes had the odor of alcohol on his breath at school; and (5) Claimant went out for pizza and beer with *fellow teachers and administrators* following school dances. (Majority op. at 869–70.) First of all, none of this evidence is relevant here. Moreover, I fail to understand why the Majority

While I do not condone Claimant's conduct, I nevertheless fail to understand how the DUI convictions directly affect Claimant's ability to teach in the public schools. Nor can I understand how the Majority can seemingly conclude that the sentences which Claimant received as a result of his DUI convictions would prevent Claimant from performing his assigned duties. (Majority op. at 870.) The UCBR made no findings with respect to the DUI sentences; indeed, the UCBR did *not* find that Claimant was either unable or unavailable to teach because of the sentences which he received.

Although Claimant's DUI convictions might constitute disregard of a standard of behavior which Employer has a right to expect, I do not believe that the school district has shown that Claimant's DUI *convictions* directly affected his work as a teacher. Arguably, Claimant's conduct sets a bad example for the youth whose ideals a teacher is supposed to foster and to elevate, *see Reitmeyer v. Unemployment Compensation Board of Review,* 145 Pa.Cmwlth. 177, 602 A.2d 505 (1992); however, the UCBR did not find that any student was aware of Claimant's DUI convictions. Absent such a finding, I cannot say that the DUI convictions directly reflect upon Claimant's ability to perform his assigned duties as a teacher.

Accordingly, I would reverse.

would hold this teacher to a higher standard than other teachers who go out for beer and pizza after the school dances. Finally, I note that the UCBR made no such findings of fact and concluded only that Claimant's *DUI convictions* constituted willful misconduct connected with his work.