**Karen GRIEB, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 6, 2000.

Decided Jan. 26, 2001.

William A. Hebe, Wellsboro, for petitioner.

David B. Consiglio, State College, for intervenor, State College Area School District.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J. and LEADBETTER, J.

McGINLEY, Judge.

Karen Grieb (Claimant) petitions for review of the decision of the Unemployment Compensation Board of Review (Board) which affirmed the referee's denial of benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937), *as amended,* 43 P.S. § 802(e).

The facts, as found by the Board, are as follows:

1. The claimant was last employed as a health and physical education teacher by the State College Area School District in a part-time capacity (4 days per week) at $7.40 per hour and had been so employed from 1985 and her last day of work was October 18, 1999.

2. The employer's policy, of which the claimant was aware, prohibits possessions of weapons and replicas of weapons in any school district building or on school property.

3. On September 15, 1999, the claimant violated the employer's weapons policy by transporting three shotguns onto school property.

4. The three shotguns were visible in the backseat of the claimant's 1991 Ford Taurus as such automobile was parked on school property and the contents therein were visible to passers by [sic].

5. The claimant is suspended without pay due to violation of the employer's weapon policy.

6. The claimant asserts that she was moving her residence and that is the reason the guns were in her car.

Board Decision, February 11, 2000, at 1–2; Reproduced Record (R.R.) at 6a–7a.

The Board determined that Claimant was aware of State College Area School District's (Employer) policy[2] which prohibited the possession of weapons on Em-

ployer's property and violated it without cause when she brought the three shotguns onto Employer's property in the car she drove to work on September 15, 1999.[3]

Claimant contends that the Board erred when it determined she committed willful misconduct when she inadvertently drove her car onto Employer's property at a time when it contained the three shotguns.[4]

Whether a claimant's conduct rises to the level of willful misconduct is a question of law subject to our review. *Lee Hospital v. Unemployment Compensation Board of Review*, 139 Pa.Cmwlth. 28, 589 A.2d 297 (1991). The employer bears the burden of proving that it discharged an employee for willful misconduct. *City of Beaver Falls v. Unemployment Compensation Board of Review*, 65 Pa.Cmwlth. 14, 441 A.2d 510 (1982). Willful misconduct is defined as conduct that represents a wanton and willful disregard of an employer's interest, deliberate violation of rules, disregard of standards of behavior which an employee can rightfully expect from his employee, or negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interest or employee's duties and obligations. *Frick v. Unemployment Compensation Board of Review*, 31 Pa.Cmwlth. 198, 375 A.2d 879 (1977). The employer bears the burden of proving

**2.** Paragraph 2 of the Employer's Weapons Policy provides:

The State College Area School District [Employer] prohibits possession of weapons and replicas of weapons in any school district building, on school property, at any school sponsored activity, and in any public conveyance providing transportation to or from school or a school sponsored activity. If weapons are found in the schools, the district will take all appropriate steps to remove the weapons and carry out the relevant provisions of Act 26 of 1995.

State College Area School District Weapons Policy at 1.

**3.** Employer informed the referee at hearing that, following Claimant's suspension, the

school board voted to discharge Claimant because of this incident. However, because the arbitration concerning the discharge had not yet occurred, Employer continued to maintain Claimant in the status of a suspended employee. Notes of Testimony, December 15, 1999, (N.T.) at 8. The record does not indicate any change in Claimant's status.

**4.** Our review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or essential findings of fact are not supported by substantial evidence. *Lee Hospital v. Unemployment Compensation Board of Review*, 161 Pa. Cmwlth. 464, 637 A.2d 695 (1994).

the existence of the work rule and its violation. Once the employer establishes that, the burden then shifts to the claimant to prove that the violation was for good cause. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985).

■ Initially, Claimant contends that Employer's policy on weapons only applied to students and not to staff. The Board found that the policy prohibited the possession of weapons on Employer's property. A review of the policy reveals that the prohibition is not limited to students, even though the disciplinary portion of the policy only addressed the discipline of students and not staff. The Board's finding that Employer possessed a weapons policy that applied to Claimant is supported by substantial evidence.

■ Claimant next contends that even if she violated Employer's policy, her inadvertent, one time violation of the policy does not constitute willful misconduct. It is undisputed that Claimant parked the vehicle on school property and that the vehicle contained three visible shotguns. It is clear that Claimant violated Employer's work rule. The burden then shifted to Claimant to establish good cause for the violation of the work rule.

Claimant testified that she was in the process of moving her belongings to a new apartment and the "back seat [of her car] was secured with CD's, a lot of personal belongings, clothing, lamps, things of that nature and a shotgun on the edge of the back seat and two on the floor." N.T. at 5. Claimant testified that she loaded the car on September 14, 1999, and did not plan to move the material until the next morning because it was rainy and cold and she was not scheduled at school until 11:30 a.m. However, the next morning Employer called at 6:00 a.m., to substitute for another teacher, so she drove to school and parked the vehicle in Employer's parking lot and forgot the guns were in the vehicle. N.T. at 6–7.

Here, Claimant's explanation, offered to satisfy her burden of proving good cause for a violation of Employer's policy, was that she forgot the three shotguns were in the car when she drove to work and parked on Employer's property. We agree with the Board that Claimant did not establish good cause.

■ Generally, unintentional, inadvertent violations of an employer's work rules do not constitute willful misconduct. However, there is an exception to this rule where an employee's conduct could jeopardize an employer's effective operations or place the public at risk. *United Refining Co. v. Unemployment Compensation Board of Review*, 661 A.2d 520 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 543 Pa. 721, 672 A.2d 312 (1995).

Here, Employer established the threat to public safety. Three shotguns were brought onto school property, and left in plain view in an unattended car throughout the school day. The threat to public safety and the Employer's interest was self-evident. This Court has held in a case not involving a school district that an employee who brought a vial of gunpowder onto the employer's premises was serious enough to be classified as inimical to the employer's best interests and constituted willful misconduct. *Prior v. Unemployment Compensation Board of Review*, 52 Pa.Cmwlth. 213, 415 A.2d 940, 943 (1980).

Accordingly, we affirm.

### ORDER

AND NOW, this 26th day of January, 2001, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. Under ordinary circumstances, I would agree that a teacher who takes three unloaded shotguns onto school property has committed willful misconduct. However, because of the unique circumstances here, I would reverse the

decision of the Unemployment Compensation Board of Review (UCBR) denying unemployment compensation benefits to Karen Grieb (Claimant).

According to Claimant, on the evening of September 14, 1999, she was in the process of moving her belongings to a new residence. Claimant was moving as a result of losing her house in an eminent domain proceeding for construction of Interstate 99. (N.T. at 6.) She loaded her car with books, lamps, clothing, CDs, as well as three unloaded shotguns; she put one of the guns on the car's back seat and the other two on the floor. (N.T. at 5, 6; Exhibit No. 8.) Because it was late, cold and rainy when she arrived at her new residence, she left the items in the car overnight.

Claimant intended to unload the items the next morning before she went to work because she was not scheduled to report to work until 11:30 a.m. (N.T. at 6.) However, at 6:00 the next morning, Claimant received a telephone call from the State College Area School District (Employer) asking her to fill in immediately for another teacher. (N.T. at 6.) Claimant accepted the assignment and promptly drove to the school, forgetting that her personal belongings, including the three weapons, were still in her car. (N.T. at 6, 7, 8.) At the school, Claimant parked her car in a "very secluded area" of the parking lot, where only other staff members, not students, park, and she locked her car before proceeding to her teaching assignment. (N.T. at 5–7.) At approximately 2:45 p.m., a school custodian, who parked beside Claimant's car, observed the weapons in Claimant's car and alerted the school administration. (Claimant's brief at 7.)

On September 20, 1999, five days after the incident, Employer's superintendent questioned Claimant about the reasons for Claimant's "lapse of judgment." (N.T. at 7.) Claimant responded that she was in the course of eminent domain proceedings and was being forced out of her home earlier than she had previously been informed. Claimant also stated that her mother was dying.[1] (N.T. at 7.) Employer subsequently suspended Claimant without pay.[2] (N.T. at 5.)

Our supreme court has defined willful misconduct as

> an act of wanton or willful disregard of the employer's interest, a *deliberate* violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer.

*Myers v. Unemployment Compensation Board of Review*, 533 Pa. 373, 378, 625 A.2d 622, 625 (1993) (quoting *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 620, 383 A.2d 533, 535 (1978)) (emphasis added). Our supreme court has explained that "an employer cannot demonstrate willful misconduct by 'merely showing that an employee committed a negligent act, but instead must present evidence indicating that the conduct was of an intentional and deliberate nature.'" *Myers*, 533 Pa. at 378, 625 A.2d at 625 (quoting *Bucher v. Unemployment Compensation Board of Review*, 76 Pa. Cmwlth. 282, 463 A.2d 1241, 1243 (1983)). "Mere 'negligence' does not rise to the level of 'willful misconduct' without the additional element of an *intentional* disregard of the employer's interests." *Id.* at 379 n. 3, 625 A.2d at 626 n. 3. (Emphasis in original.) Thus, an employee's negligence

---

1. Claimant's mother passed away on November 9, 1999. (N.T. at 7.)

2. Employer informed the referee at the December 15, 1999 hearing that, following Claimant's suspension, the school board voted to discharge Claimant because of this incident. However, because the arbitration concerning Claimant's discharge had not yet occurred, Employer continued to maintain Claimant in the status of a suspended employee. (N.T. at 8.) The record does not indicate any change in Claimant's status.

does not rise to the level of willful misconduct unless "it is of 'such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.'" *Id.* at 378, 625 A.2d at 625 (quoting *Coleman v. Unemployment Compensation Board of Review*, 47 Pa.Cmwlth. 113, 407 A.2d 130, 131–32 (1979)).

The majority concludes that Claimant's conduct in inadvertently bringing the unloaded shotguns onto school property one time constitutes willful misconduct. I cannot agree.

I recognize that Claimant violated Employer's weapons policy. However, there is no question that the violation was unintentional.[3] Claimant's transgression was due to the unusually stressful events in her personal life and the fact that she was called to school five and a half hours early because of a school emergency. The evidence adduced at the proceedings before the referee indicates unequivocally that Claimant's conduct was not of an intentional or deliberate nature. Indeed, neither the referee nor the UCBR disagreed with the job center's statement that Claimant "mistakenly took the weapons to school." (R.R. at 1a.) (Emphasis added.)

Generally, unintentional, inadvertent violations of an employer's work rules do not constitute willful misconduct.[4] *United Refining Company v. Unemployment Compensation Board of Review*, 661 A.2d 520 (Pa.Cmwlth.), *appeal denied*, 543 Pa. 721, 672 A.2d 312 (1995). Nevertheless, simply because of Claimant's "position with a school district working in the presence of minors," the UCBR held Claimant "to a higher standard" and, therefore, concluded that Claimant was guilty of willful misconduct. (UCBR's decision at 2.) In doing so, I believe that the UCBR erred.

Previously, we have held "teachers to a higher standard of conduct due to the nature of their position with students." *Altemus v. Unemployment Compensation Board of Review*, 681 A.2d 866, 870 (Pa. Cmwlth.1996), *appeal denied*, 547 Pa. 757, 692 A.2d 567 (1997).[5] *See also Reitmeyer v. Unemployment Compensation Board of Review*, 145 Pa.Cmwlth. 177, 602 A.2d 505 (1992).[6] However, we have never held that a one-time, inadvertent act of misconduct by a teacher or any other employee constituted willful misconduct based solely on

---

**3.** Employer admitted that Claimant "was in the process of moving to a different place of residence and came to work at the high school forgetting that she had" the guns in her car. (Employer Questionnaire at ¶ 9, Exhibit No. 6c.)

**4.** An exception to this general rule exists where an employee's conduct could jeopardize an employer's effective operations or place the public at risk. *United Refining Company v. Unemployment Compensation Board of Review*, 661 A.2d 520 (Pa.Cmwlth.), *appeal denied*, 543 Pa. 721, 672 A.2d 312 (1995). However, this exception is to be "applied on a case by case basis, considering all of the circumstances." *Finch v. Unemployment Compensation Board of Review*, 692 A.2d 619, 622 (Pa.Cmwlth.1997). We recently stressed the importance of considering mitigating circumstances when we determined that a school district's zero tolerance weapons policy improperly nullified a superintendent's discretion tc recommend modification of the penal-

ty of expulsion on a case-by-case basis. *See Lyons v. Penn Hills School District*, 723 A.2d 1073 (Pa.Cmwlth.), *appeal denied*, 559 Pa. 708, 740 A.2d 235 (1999). Thus, here, if the UCBR intended for the exception to apply, it was bound to consider all of the circumstances. However, Employer produced no evidence as to how its operations could have been jeopardized or the public placed at risk by Claimant's conduct, and the UCBR did not consider whether Claimant's unusual mitigating circumstances militated against a conclusion of willful misconduct.

**5.** In *Altemus*, we held that a teacher's multiple convictions for driving while intoxicated and the fact that students saw the teacher in an intoxicated state constituted willful misconduct.

**6.** In *Reitmeyer*, we concluded that a teacher's distribution of a racist "joke sheet" constituted willful misconduct.

the imposition of a higher standard of conduct.[7]

Considering, as we must, *see Finch v. Unemployment Compensation Board of Review*, 692 A.2d 619 (Pa.Cmwlth.1997), all of the facts and circumstances concerning Claimant's transportation of the unloaded shotguns onto school property, I would conclude as a matter of law that Claimant's one-time, inadvertent violation of Employer's weapons policy does not rise to the level of willful misconduct. Accordingly, I would reverse the UCBR's decision denying Claimant benefits.

7. In *Holly v. Unemployment Compensation Board of Review*, 151 Pa.Cmwlth. 450, 617 A.2d 80 (1992), *appeal denied*, 534 Pa. 643, 626 A.2d 1160 (1993), we held a health care professional to a higher standard of care, ruling that her inadvertent misidentification of a patient's blood sample on four occasions in violation of hospital procedure constituted willful misconduct. We explained that, as a result of the employee's negligence, the patient could have undergone additional unnecessary tests or treatments and the hospital could have been liable for any harm suffered by the patient. *Id.* In *United Refining Co.*, we held an oil pumper to a higher standard of conduct. There, we ruled that the inadvertent failure to properly secure a valve on an oil tank, resulting in several thousand gallons of oil spilling into a water treatment system, negatively impacting the environment and causing the employer to pay fines and bear the expense of clean up, constituted willful misconduct. In both of those cases, the employees had been disciplined in the past for similar misconduct and there was evidence of how the employees' misconduct jeopardized the employer's effective operations or placed the public at risk. In stark contrast here, such evidence was lacking.

In arguing that Claimant's inadvertent conduct constitutes willful misconduct, Employer relies on *Bailey v. Unemployment Compensation Board of Review*, 71 Pa.Cmwlth. 385, 454 A.2d 1182 (1983) and *Prior v. Unemployment Compensation Board of Review*, 52 Pa.

Cmwlth. 213, 415 A.2d 940 (1980). In *Bailey*, we held that a claimant's violation of a company's weapons policy by having a razor in his truck constituted willful misconduct. However, *Bailey* is distinguishable on several grounds. In *Bailey*, the claimant was on the verge of being discharged for other reasons. Although the claimant testified that he had forgotten that the razor was in the company truck, this defense of inadvertence was rejected as incredible by the UCBR. Additionally, the claimant violated the employer's weapons policy when he placed the weapon in the company truck, an act that obviously was not inadvertent. Here, in contrast, Claimant did not violate Employer's policy by placing the shotguns in her car; rather, Claimant violated Employer's weapons policy when, having forgotten about the guns' lawful presence in her car, she inadvertently transported them onto school property. There has been no finding that Claimant's testimony in this regard was not credible. Thus, unlike the violation in *Bailey*, Claimant's violation of the weapons policy was, in fact, inadvertent. *Prior* is similarly distinguishable because of the intentional nature of the violation. There, the claimant testified that he brought a vial of gunpowder onto the employer's property for analysis, mislaid it and subsequently forgot about it until it was discovered two and a half years later. There was no question that the claimant intentionally brought the gunpowder to work. Thus, neither *Bailey* nor *Prior* controls the outcome here.