Vance C. Gallagher, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued May 5, 1978, before Judges MENCER, ROGERS and DiSALLE, sitting as a panel of three.

*Peter H. Shaffer,* for appellant.

*Susan Shinkman,* Assistant Attorney General, with her *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, July 20, 1978:

This appeal is from an order of the Unemployment Compensation Board of Review (Board) affirming a referee's determination that Vance C. Gallagher (claimant), having been dismissed for willful miscon-

duct connected with his work, was ineligible for benefits. *See* Section 402(e) of the Unemployment Compensation Law (Act).[1]

The claimant was employed as a bartender at Zima's Restaurant in Butler, Pennsylvania. The referee made only three findings of fact:

1. The claimant was last employed as a Bartender for approximately seven months by Zima's Restaurant, at the rate of $165 per week. The claimant's last day of work was March 4, 1976.

2. On March 5, 1976, the claimant was enjoying his day off and was in the employer's establishment that evening, when he called the employer's girl friend an unsavory name.

3. The employer dismissed the claimant because of the name-calling, and the confrontation that took place.

In willful misconduct cases, the burden of establishing the claimant's ineligibility is placed upon the employer, and our scope of review is limited to questions of law and to a determination of whether or not the findings of the Board are supported by substantial evidence. The question as to whether or not a claimant's conduct constituted willful misconduct is, of course, one of law and subject to our review. *Unemployment Compensation Board of Review v. Walton,* 21 Pa. Commonwealth Ct. 47, 343 A.2d 70 (1975).

The section of the statute at issue here provides that the misconduct which causes the discharge of the claimant, to be disqualifying, must be "connected with his work." Claimant called, or referred to, the employer's girl friend as a "bitch."[2] Although this hap-

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

[2] The record reveals that Zima's Restaurant is owned by Theodore Zima and Gertrude Zima, his wife. Gertrude Zima, in exhibit

pened at the place of claimant's employment, it occurred on his "day off."[3] More significant, the remark, which we recognize as disrespectful and do not in any way approve, had nothing to do with the work the claimant was employed to do.[4]

An employer may require that his employees be exemplary citizens off the job as well as on. He may

[2] admitted into evidence as the employer's statement relative to reason for separation, stated: "My husband fired him because he had an argument with my husband's girl friend. This was very unfair. Vance was very dependable and a good worker. When my husband needed a bartender Vance quit his other job to help us out. This woman has caused so much trouble at the bar, even shooting at my husband and he sticks up for her."

[3] We are of the view that, if claimant had made the same remark to employer's girl friend at any other location than the employer's place of business, the remark, although equally reprehensible, clearly would not have disqualified claimant for unemployment compensation benefits. In *Nevel v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 6, 377 A.2d 1045 (1977), we recognized that there is no requirement that an employee's misconduct occur on the employer's premises and/or while on duty. See *Cadden Unemployment Compensation Case*, 195 Pa. Superior Ct. 159, 169 A.2d 334 (1961). However, unlike the factual situations in those cases, the claimant's transgression in the instant case was not work connected.

[4] Although the employer had the burden of establishing the claimant's ineligibility, he did not appear and testify at the referee's hearing. However, it is interesting that the bartender on duty did testify as follows:

REFEREE TO CLAIMANT'S WITNESS (JIM WALKER) . . . Q. Did you hear the employer tell Mr. Gallagher he was fired while he was still in the Bar? A. Yes, I did. Q. And up to that point when he was fired what had happened, occurred, in your own words? A. Well, as he says, well just the same of what he said. I couldn't tell it any different. It was totally uncalled for. Q. Well, that's your judgment, I have to make a judgment. A. Well, you realize what this is costing me, too. I mean, I come down here to witness for him, not even really knowing that he wasn't showing up, so it's going to show hard feelings for me. Q. You mean you also work Lima's (sic) restaurant,

discharge them for failing to live up to this standard, unless restricted otherwise by contract provisions. However, acting in a manner meriting the employer's disapproval does not disqualify an employee from receiving unemployment compensation upon his discharge unless his dereliction is *connected with his work.*

We must conclude, on the findings made and the record in this case, that the offense of the claimant was not connected with his work in the sense in which that phrase is used in the Act. Our holding today is, of course, limited to the facts we have before us, and we do not imply that we approve of unsavory language.[5] Our careful review of the record, however, leads us to conclude that claimant's comment simply was not work connected, a prerequisite required by the Act for a denial of benefits.

---

too? Yes, I do. Q. In what capacity? A. Bartender on weekends. CLAIMANT: He was the Bartender on duty that night when this happened. WITNESS FOR CLAIMANT (JIM WALKER) : So, if I didn't think that he was right, I sure wouldn't risking [sic] my job.

[5] As we have held in the past, not all instances of vulgar and offensive language addressed *to a superior* constitute such willful misconduct on the part of an employee as will justify denial of benefits. *Horace W. Longacre, Inc. v. Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 176, 316 A.2d 110 (1974). However, in the past we have dealt with cases where the claimant's language was directed toward supervisors, employers, or fellow employees, while in a work-connected setting. *Unemployment Compensation Board of Review v. Tumolo*, 25 Pa. Commonwealth Ct. 264, 360 A.2d 763 (1976) ; *Unemployment Compensation Board of Review v. Boff*, 24 Pa. Commonwealth Ct. 571, 357 A.2d 694 (1976) ; *Fields v. Unemployment Compensation Board of Review*, 7 Pa. Commonwealth Ct. 200, 300 A.2d 310 (1973) ; *see Jarema Unemployment Compensation Case*, 196 Pa. Superior Ct. 70, 173 A.2d 698 (1961). Here we are confronted with an improper remark made to a member of the public, not even a patron of the business, but, as to claimant's employers, one who holds the relationship of a paramour, as to the one, and, as to the other, of an unwelcomed threat to her marriage.

Accordingly, we make the following

ORDER

AND Now, this 20th day of July, 1978, the order of the Unemployment Compensation Board of Review, dated October 22, 1976, disallowing a further appeal and thereby denying unemployment compensation benefits to Vance C. Gallagher, is hereby reversed.