**PORT AUTHORITY OF ALLEGHENY COUNTY, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 2008.

Decided Sept. 4, 2008.

Kimberly A. Craver, Pittsburgh, for petitioner.

Carol J. Mowery, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY,
PELLEGRINI and COHN JUBELIRER,
Judges.

OPINION BY Judge COHN JUBELIRER.

In this consolidated case, Port Authority of Allegheny County (Employer) petitions for review of orders of the Unemployment Compensation Board of Review (Board) affirming the decisions of an Unemployment Compensation Referee (Referee), which affirmed the determinations of the Unemployment Compensation Service Center (Service Center) granting benefits to Edward Bak (Bak), Wayne Todd (Todd), Carol Bertram (Bertram), and Orest Horhut (Horhut) (collectively, Claim-

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.

ants). Employer argues that, because Claimants voluntarily retired prior to continuing to work under its Deferred Retirement Option Plan (DROP), they are not eligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1]

Following a consolidated hearing, the Referee made the following findings of fact with respect to Bertram:

2. The employer has a program called Deferred Retirement Option Plan (DROP), which employees who were over retirement age and not represented by a collective bargaining unit during the period beginning June 1, 2002 and ending May 31, 2003 could choose to participate, provided that they elected participation during this one-year enrollment period.

3. The employee must file an application and if approved must retire within five years of the application date.

4. As a condition of this application, the applicants were required to enter into an Irrevocable Election and Agreement to Participate under which the participant elected a precise length of requested DROP period in whole years.

5. During the period of the claimant's participation in the DROP program, neither the employer nor the employee contributed to the employer's pension, and the employee's pension amount no longer increases.

6. Monthly pension credits, in the amount of pension payment the employee would be entitled to, were made to a special account for the employee bearing interest.

7. Upon retirement separation from the DROP program, the employee is

§ 802(b).

entitled to a lump sum payment of the amount credited to the special account with interest.

8. The provisions governing the rights and obligations of the parties under the Deferred Retirement Option Plan (DROP) were clarified in Section 24–Deferred Retirement Option Plan (DROP) of the Port Authority of Allegheny Retirement and Disability Allowance Plan for Employees Not Represented by a Union as amended and restated effective as of January 1, 2007 and remained unchanged from their original adoption. (Be 17602.1; 020542110586 J102680.2).

9. On January 2, 2003, the claimant applied for participation in the DROP program executing the required documents from the Port Authority.

10. The Port Authority of Allegheny County required execution of two forms constituting agreements.

11. The Port Authority required a Retirement Notification Form whereby the claimant elected to retire voluntarily from the Port Authority effective February 1, 2003.

12. The Port Authority required execution of a form agreement of "Irrevocable Election and Agreement to Participate in the Deferred Retirement Option Plan (DROP)" in which the claimant was required to establish [his or her] effective date of DROP entry by month and year and required to elect [his or her] length of DROP period in "whole years; maximum 5".

13. The claimant designated her effective DROP entry date of February 2003 and length of DROP period as 5 years.

14. The claimant received a financial gain by entering the program.

15. The claimant was not in imminent danger of being laid off at the time she entered the program.

16. The claimant knew she would be required to retire at the end of the 5-year election period, which would run its course on January 31, 2008.

17. The claimant's application for job participation was approved and claimant was accepted into the DROP program.

18. Continuing work was available for the claimant at the time of her election into this program had she not retired.

19. The claimant complied with the requirements of the DROP program and intended to remain employed through the anniversary date of January 31, 2008 in accordance with her "Irrevocable Election and Agreement to Participate" in this program.

20. On March 30, 2007, by resolution, the Port Authority of Allegheny County amended Section 24 of the Plan as follows:

\* \* \*

6. The applicable provisions of Section 24 are amended to reflect that DROP participants may remain active employees for no more than five years but under no circumstances may remain active employees after July 1, 2007;

21. The claimant's participation in the DROP program was ended after July 1, 2007 pursuant to this resolution and no further work was available or offered to the claimant with the Port Authority after that date.

22. The claimant executed the required Port Authority of Allegheny County DROP Separation from Service Retirement Notification form under protest.

23. The claimant would not have left employment or participated in the

DROP program except for the Port Authority's decision to terminate the DROP program through its March 30, 2007 resolution.

24. The employer adopted its March 30, 2007 resolution for business reasons.

25. The claimant is able and available for suitable work.

26. No alternative offer of work was made to the claimant.

(Referee's Decision, Findings of Fact (FOF) ¶¶ 2–26, September 18, 2007, Appeal No. 07–09–H–5682.) The Referee made substantially similar findings with respect to the other Claimants as well.[2] The Referee reasoned that, for purposes of Section 402(b), a resignation is generally not effective until the effective date stated in the resignation. The Referee construed the elected separation dates selected by Claimants to be the effective dates proclaimed by their resignations, and found that Employer's discharge of Claimants prior to these dates, therefore, constituted involuntary terminations. The Referee held that Claimants were eligible for benefits. Employer appealed the Referee's decisions to the Board, which adopted the Referee's findings of fact and conclusions of law. Employer now petitions this Court for review.[3]

On appeal, Employer argues that: (1) the Board should have analyzed Claimants' cases as voluntary quit cases under Section 402(b) of the Law, rather than as discharge cases under Section 402(e), because Claimants voluntarily quit their employment when they elected to participate in the DROP program; (2) Claimants did not have necessitous and compelling reasons to retire; (3) the Board's finding that the requested DROP periods were irrevocable was not supported by substantial evidence; and (4) the Board erred in granting benefits because Claimants' unemployment is not the type of harm which the Legislature intended the Law to ameliorate.[4]

■ We first address Employer's argument that the Board erred in determining that Employer discharged Claimants. Employer contends that Claimants voluntarily quit their employment when they elected to participate in the DROP program. The lynchpin of this argument, as of most of the arguments Employer advances in this appeal, is that Claimants voluntarily quit their employment when they elected to participate in the DROP program and executed Retirement Notification Forms. In support of this proposition, Employer relies on this Court's decision in *Davila v. Unemployment Compensation Board of Review*, 926 A.2d 1287 (Pa.Cmwlth.2007), in which this Court considered a claim for unemployment compensation by an employee who had participated in a similar DROP program. In *Davila*, the claimant retired "pursuant to the terms of the DROP pro-

---

**2.** The Referee's decision in Bertram's case states:

> On September 12, 2007, the Referee conducted a consolidated hearing [in Claimants' cases]. The hearing was a joint hearing in accordance with Section 505 [of the Law] and 34 Pa. [Code] § 101.22 with a single record where testimony and evidence introduced as one appeal was considered introduced with respect to all. These cases were consolidated as they involved the same or substantially the same issues and a single record of the proceedings was made.

(Referee's Decision at 3.)

**3.** In reviewing the decisions of the Board, this Court is limited to determining whether the Board committed an error of law, violated constitutional rights, or made findings of fact unsupported by substantial evidence. *Brunswick Hotel & Conference Center v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 n. 2 (Pa.Cmwlth.2006).

**4.** For clarity of analysis we have reordered Employer's arguments.

gram" at issue in that case. *Id.* at 1288. The claimant then applied for unemployment compensation benefits arguing that, due to her participation in the DROP program, she had necessitous and compelling cause to quit her employment. This Court held that the claimant's only reason for retirement was that she participated in the DROP program and that, had she not participated in the program, continuing work would have been available for her. Therefore, this Court affirmed the Board's decision to deny benefits. Employer argues that, in this case, as in *Davila,* the sole reason that Claimants are unemployed is that they participated in Employer's DROP program and that, when they retired and entered into the DROP program, continuing work was available for them.

■ Section 402(b) of the Law states that an employee will not be eligible for unemployment compensation benefits for weeks in which the employee is unemployed because he left work "without cause of a necessitous and compelling nature." 43 P.S. § 802(b). Whether a claimant voluntarily quit his employment or whether his employer discharged him is a question of law for this Court "to determine from the totality of the record." *Bell v. Unemployment Compensation Board of Review,* 921 A.2d 23, 26 (Pa.Cmwlth.2007). While Employer relies on *Davila,* this case is distinguishable. In *Davila,* there is no indication that the claimant was discharged prior to the end of the period she elected when entering into the DROP program. In this case, Claimants each elected a period during which he or she would participate in the DROP program, and af-

ter which his or her employment would terminate. Had Employer retained Claimants until the end of their DROP periods, we would agree that *Davila* would be applicable. However, this case is more similar to *Amado v. Unemployment Compensation Board of Review,* 177 Pa.Super. 506, 110 A.2d 807 (1955), in which an employee notified his employer that he resigned as of a certain date, and his employer discharged him prior to that date. The Superior Court held that the employee was eligible for unemployment compensation benefits until the date he had specified in his resignation. Likewise, in *PECO Energy Company v. Unemployment Compensation Board of Review,* 682 A.2d 40 (Pa. Cmwlth.1996), certain of the claimants in that case had, after choosing to participate in early retirement or voluntary separation plans, agreed with PECO to continue working until certain dates. *Id.* at 44. When PECO discharged those employees prior to the agreed upon dates, this Court held that the employees were entitled to unemployment compensation benefits during the period between their discharge dates and the agreed-to termination dates. *Id.* at 47–48. Similarly, in this case, Claimants each executed a Retirement Notification Form, entered into the DROP program, and agreed to continue working for a period of time thereafter. Employer discharged Claimants before these periods expired and, therefore, for purposes of unemployment compensation, Claimants are considered to have been discharged until such time as those periods expire, and after which time they are considered to have voluntarily quit.[5]

---

5. Employer argues that *Amado* and *PECO* are distinguishable because, in those cases, the employer and the claimants involved *agreed* to a specific end date for the employment before the employer unilaterally discharged the claimant, whereas here, Claimants merely *re-*

quested a DROP period. Even assuming Employer's characterization of the current case to be accurate, there is no indication in the *Amado* case that the employer there acquiesced to the effective date of the claimant's resignation.

Employer repeatedly stresses that Claimants chose to participate in the DROP program, that Employer reserved the right to alter the terms of the DROP program at any time, and that Employer, therefore, had "the option of cutting off any retiree's participation in the DROP program" at any time. (Employer's Br. at 22.) Employer also stresses that the effective dates of Claimants' resignations were prior to or contemporaneous with their entry into the DROP program. Essentially, Employer argues that because Claimants' resignations purported to be effective as of their participation in the DROP program, and because the terms of the DROP program were subject to Employer's unilateral change, Claimants were agreeing to voluntarily quit whenever Employer told them to stop working. This confuses the question of whether an employee is an at-will employee with the question of whether a claimant may receive unemployment compensation benefits. Claimants' resignations and participation in the DROP program may have been sufficient to give Employer the right to discharge them at any time for collective bargaining, pension, or contractual purposes. However, such resignations and participation were not sufficient to waive their right to unemployment compensation.[6] Indeed, we note that under Section 701 of the Law, 43 P.S. § 861, employees cannot agree to waive their unemployment compensation benefits.

Were we to accept Employer's argument, well-counseled employers would simply ask each new hire to resign effective his first day of work and select a period during which he requested to continue work. Employer could then keep the employee at its leisure, until it unilaterally decided it no longer wished to employ him, at which point it would "retire" him, and such "retirement" would be considered a voluntary quit. Such a scheme subverts the intention of the Law. Although Claimants tendered resignations, which purported to be effective as of February 2003, Employer invited them to request a period during which they would continue to work, *and Employer then continued to employ Claimants during this selected period, after the purported effective date of Claimants' resignations.* Under these facts, it is clear that Claimants' resignations were to be effective at the end of their DROP periods. Therefore, pursuant to *Amado* and *PECO*, the Board did not err in determining that, *during the time prior to the expiration of their DROP periods*, Claimants' unemployment should be considered involuntary, and analyzed under Section 402(e).[7]

We next address Employer's argument that the Board's finding of fact that the DROP periods elected by Claimants were irrevocable is not supported by substantial evidence. We begin by noting that, in her enumerated findings of fact, which were adopted by the Board, the Referee made no such determination. In its discussion adopting the Referee's findings of fact and conclusions of law, the Board did state that "[t]he claimant elected a DROP period of five years and, despite the irrevocable nature of the DROP period, the employer unilaterally altered the elected DROP period." (Board Op. at 1.) Regardless, however, as discussed above, the issue in this case is not whether Employer had the *right* to discharge Claimants, which right employers usually *do* have, but whether

---

**6.** We do note, however, that had Claimants worked until the end of their DROP periods, we would consider them to have voluntarily quit, as in *Davila*.

**7.** Due to our holding on this issue, we do not reach Employer's argument that Claimants did not have necessitous and compelling cause to quit their jobs.

Claimants are eligible for unemployment compensation. As discussed above, this Court's interpretation of the issue is that by resigning and entering into the DROP program, Claimants voluntarily quit effective the end of the DROP period, for purposes of unemployment compensation.

■■■■ Lastly, we address Employer's argument that Claimants' unemployment is not the type of harm which the Legislature intended the Law to ameliorate and that the Board, therefore, erred in granting benefits. Employer's first contention in this regard is that, because Claimants voluntarily participated in the DROP program and benefited monetarily from their participation, they are not unemployed through no fault of their own as intended by Section 3 of the Law, 43 P.S. § 752. Section 3 states in part that:

> The Legislature ... declares that in its considered judgment the public good and the general welfare of the citizens of this Commonwealth require the exercise of the police powers of the Commonwealth in the enactment of this act for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

43 P.S. § 752. Employer argues that this Court has applied Section 3 substantively in other cases such as *Frank v. Unemployment Compensation Board of Review*, 124 Pa.Cmwlth. 299, 556 A.2d 15 (1989) (holding that the claimant in that case was not eligible for benefits where she was discharged because she had not come to work because she was in jail for welfare fraud) and *Corbacio v. Unemployment Compensation Board of Review*, 78 Pa.Cmwlth. 70, 466 A.2d 1117 (1983) (holding that the claimant was not eligible for benefits where he was fired from his job as a delivery driver after he lost his driver's license due to speeding violations).

Therefore, Employer argues that the Board should apply Section 3 in this case because Claimants are unemployed due to their voluntary retirement and participation in the DROP program. We disagree. As noted above, Claimants were clearly willing and available to continue working had Employer not required them to stop. Claimants did voluntarily participate in the DROP program, which Employer argues gives it the right to unilaterally terminate Claimants' employment; however, we do not view such participation as the sort of culpability upon which this Court has relied in the cases Employer cited dealing with Section 3. Employment in Pennsylvania is usually considered to be at-will. *Knox v. Board of School Directors of Susquenita School District*, 585 Pa. 171, 183, 888 A.2d 640, 647–48 (2005). Even assuming that Claimants had a right to continued employment, which they somehow relinquished by entering into the DROP program, such relinquishment would not be fault of their own sufficient to deny benefits when Employer subsequently discharged them.

■■■■ Employer next asserts that the Law is intended to protect against economic hardship and, because Claimants received lump sums upon their discharge as a result of their participation in the DROP program, they are not subject to economic hardship and should be denied benefits. Employer cites *Unemployment Compensation Board of Review v. Molitoris*, 24 Pa.Cmwlth. 360, 356 A.2d 863, 865 (1976), for the principle that "the purpose of the [Law] is to relieve the economic hardship of *sudden* unemployment and provide temporary assistance for the resulting economic burden." While we agree with this statement, Employer offers no authority for the proposition that unemployment compensation benefits are, or should be, means-tested, or that only claimants who

will be impoverished may receive benefits. As Claimants note, had they been allowed to continue working, they would have continued to earn their salaries and pension benefits paid into the special accounts, which would have earned more interest. Having been offered no authority for the proposition that we should deny Claimants benefits where they have not proven that they will be impoverished without them, we find this argument to be without merit.

For these reasons, we affirm the order of the Board.

## *ORDER*

**NOW,** September 4, 2008, the orders of the Unemployment Compensation Board of Review in the above-captioned matters are hereby AFFIRMED insofar as they grant unemployment compensation benefits for the period between each employee's discharge and that time when he or she would have been unemployed due to the elapse of his or her elected DROP period.