PRIMEPAY, LLC, Petitioner

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 10, 2008.

Decided Nov. 25, 2008.

Maria J. Morinigo, Philadelphia, for petitioner.

Randall S. Brandes, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge McGINLEY.

This is an appeal from the order of the Unemployment Compensation Board of Review (UCBR) which denied PrimePay, LLC's (Employer) request for a remand to produce after-discovered evidence of Mary T. Mack's (Claimant) criminal activity against Employer.

Claimant was employed as a customer service representative and claims processor from October 2005, until March 28, 2007. Claimant was on approved medical leave of absence from March 29, 2007, through June 20, 2007, due to complications with pregnancy. Claimant requested, and was granted, an extension of her leave. Claimant was to return to work on Monday, July 9, 2007. Late on the evening of Sunday, July 8, 2007, Claimant e-mailed her supervisor and informed her that the babysitter unexpectedly quit and childcare was unavailable for the next day. On Monday, July 9, 2007, Claimant notified her supervisor that she could not report to work on Tuesday. Claimant was told that if she did not return to work on Wednesday, July 11, 2007, she would be terminated. Claimant did not return to work and was terminated.

Claimant's application for unemployment benefits was denied under Section 402(e) of the Unemployment Compensation

Law (Law), 43 P.S. § 801(e)[1]. The Unemployment Service Center concluded Claimant was discharged for absenteeism, Claimant was warned about absenteeism and she did not establish good cause for the last absence.

Claimant appealed and at the hearing on August 28, 2007, Employer's operations manager, Judy Weber (Weber), testified that Claimant was unable to state for certain when she would return, although she told Weber that her aunt, who could babysit, would be back from vacation in a week. Notes of Testimony, August 28, 2007 (N.T.), at 7; Reproduced Record (R.R.) at 11a. Employer's human relations department decided that because there was no time frame for Claimant's return, and because Claimant had already been granted an extension of her leave, she would be terminated if she did not return on Wednesday. N.T. at 10; R.R. at 14a.

Claimant testified that she told Weber that she would have a babysitter by Monday, July 16, 2007. N.T. at 15; R.R. at 19a. Even though she was available as of July 16, 2007, Employer nevertheless terminated her employment.

The referee resolved conflicting testimony in favor of the Employer and found that Claimant failed to inform Employer that she would have childcare in place as of the following week. The referee held that Claimant was ineligible for benefits under Section 402(e) of the Law beginning with waiting week ending July 14, 2007. However, finding that Claimant was available

for work as of July 16, 2007, the referee held that she was eligible for benefits under Section 402(d)(1) of the Law, 43 P.S. § 801(d)(1), beginning with waiting week ending July 21, 2007.

Both parties appealed from the referee's decision. Employer also requested a remand to the referee for consideration of after-discovered evidence of Claimant's criminal conduct. Employer alleged that after Claimant was terminated, Employer discovered that Claimant had misappropriated over $4,500 using her home computer and accessing Employer's computer system.[2] One week after the hearing, Claimant was arrested and charged with over 200 counts of computer theft, computer trespass, unlawful use of a computer, and other related crimes connected to her employment and the unauthorized theft of Employer's funds. According to Employer, Claimant confessed to the arresting officer and was awaiting trial. Employer alleged that if the evidence had been discovered prior to Claimant's discharge Employer would have discharged Claimant for willful misconduct.

The UCBR found that Claimant had good cause for not returning to work and credited her testimony that she informed Employer that she could return to work the following week. The UCBR held that Claimant was not ineligible for compensation pursuant to Section 402(e) of the Law. The UCBR also denied Employer's request for a remand, and concluded, based

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended.*

2. In its Brief, Employer refers to portions of Claimant's testimony concerning charges incurred under Employer's flexible spending plan, a fringe benefit that allows employees to make pre-tax contributions to the plan and then make payments for medical expenses, prescriptions and co-pays by using a "flex card." Employer presented into evidence

records showing that Claimant's contributions to her plan totaled $1,500 and that she used her flex-card to pay for $6000.97 in charges. Claimant acknowledged that the flexible spending plan fell under her department and that she could authorize transactions under the plan. However, Claimant did not recall using the flex-card to overdraw her account. N.T. at 17–19; R.R. at 21a–23a.

on *Preservation Pennsylvania v. Unemployment Compensation Board of Review*, 673 A.2d 1044 (Pa.Cmwlth.1996), that the alleged criminal conduct was "unrelated" to Claimant's discharge from employment; therefore, Claimant was eligible for benefits under *Preservation Pennsylvania*.

On appeal to this Court [3], Employer contends that a remand is warranted in this case pursuant to this Court's holding in *Preservation Pennsylvania*. This Court must agree.

■ It is well settled that to disqualify an employee from receiving unemployment benefits, the employer must prove: (1) the employee was engaged in willful misconduct; and (2) that the willful misconduct was the "actual reason" or the "cause" for the employee's separation from employment. *Gallagher v. Unemployment Compensation Board of Review*, 36 Pa.Cmwlth. 599, 388 A.2d 785 (1978).

■ *Preservation Pennsylvania* carved out a narrow exception to this rule to allow after-discovered evidence of criminal conduct against the employer when the employer could not have known of the conduct prior to the employment separation. Now, an employer may meet its burden if it proves "by after discovered evidence" that the willful misconduct was concealed, and had the employer been aware of the conduct, it would have terminated the employee. In other words, *Preservation Pennsylvania* allows the employer to prove, after the fact, that it would have terminated the employee if it had been aware of the concealed misconduct.

The Board argues that the exception enunciated in *Preservation Pennsylvania* only allows for after-discovered evidence where there is a causal relationship *between the actual termination and the employee's criminal acts*. The Board relies on the following excerpt from the case, in particular the emphasized language:

> Thus where evidence of an employee's embezzlement of an employer's funds, or other criminal conduct committed against an employer *which causes the employee's unemployment*, is received within a reasonable period of time after the employee's separation and the employer promptly acts to contest a determination of eligibility of benefits, the Board is not deprived of authority to permit evidence of the after-discovered criminal conduct. (Emphasis added).

*Preservation Pennsylvania*, 673 A.2d at 1048.

The holding in *Preservation Pennsylvania* did not turn, as the Board suggests, on the fact that the real or "actual reason" for the termination related to or was caused by the employee's embezzlement. In *Preservation Pennsylvania*, the embezzlement drained the employer's funds and the employee was furloughed as a result of her employer's inability to pay her salary. The case was decided in that context. Contrary to the Board's analysis, whether the "actual reason" the employee in that case was separated from employment, i.e., furloughed due to the employer's inability to pay her salary, was a consequence of her embezzlement, was not the test outlined in *Preservation Pennsylvania*. Rather, *Preservation Pennsylvania* allows an employer to turn the clock back and substitute after-discovered misconduct for whatever the "actual reason" was for the

---

3. This Court's scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Port Authority of Allegheny County v. Unemployment Compensation Board of Review*, 955 A.2d 1070 (Pa.Cmwlth.2008)

separation, so long as employer proves that the employee concealed the misconduct while employed.

Contrary to the Board's position, the emphasized language in *Preservation Pennsylvania* does not compel a different result. While the opinion was written to address the specific factual situation presented, there is nothing in the opinion which suggests that its holding is limited to situations where the misconduct and the actual termination are interrelated. Indeed, to allow benefits merely because the actual reason for the employee's termination happened not to be related to his concealed criminal misconduct defies logic and serves no purpose. Likewise, to deny benefits only where the criminal misconduct happens to result in circumstances that lead to the actual termination would leave the question of eligibility to mere coincidence, with no rational basis between denying and granting benefits. That is not what this Court intended in *Preservation Pennsylvania*.

▇▇▇ Here, Claimant stole money from Employer while she was employed. Because Claimant concealed her misdeeds, Employer did not discover the theft until after she was terminated for absenteeism. Had Employer known about the theft, Claimant would have been fired for willful misconduct. It does not matter one iota that Claimant's criminal misconduct was not related to the actual reason she was terminated, i.e., she was fired for absenteeism. The issue is not whether the criminal conduct was related to the discharge. The issue is whether the Claimant concealed from Employer criminal conduct which, had the Employer known, would have resulted in her discharge. Employer should be permitted to offer evidence of

Claimant's criminal conduct and argue, absent Claimant's concealment, it would have fired her for such misconduct. This Court is constrained to conclude that the Board abused its discretion and erred as a matter of law when it denied Employer's request for a remand.

Accordingly, the Board is reversed and the matter is remanded for proceedings consistent with this opinion.

### ORDER

AND NOW, this 25th day of November, 2008, the order of the Unemployment Compensation Board of Review is reversed and the matter is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

DISSENTING OPINION BY Judge FRIEDMAN.

Respectfully, I dissent. I believe that the majority's holding ignores essential language in *Preservation Pennsylvania v. Unemployment Compensation Board of Review*, 673 A.2d 1044 (Pa.Cmwlth.1996), conflicts with fundamental principles of unemployment compensation law and fails to consider the inevitable consequences of fashioning such an unworkable rule.

In the present case, PrimePay, LLC (Employer) discharged Mary T. Mack (Claimant) because Claimant failed to report to work on July 11, 2007, following an approved leave of absence. Crediting Claimant's testimony, the Unemployment Compensation Board of Review (UCBR) concluded that Claimant had good cause for not returning to work as scheduled, and, therefore, she was not ineligible for benefits pursuant to section 402(e) of the Unemployment Compensation Law.[1] In ad-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

dition, the UCBR denied Employer's request for a remand hearing pursuant to *Preservation Pennsylvania* to present after-discovered evidence showing that, after the referee's hearing, Claimant was arrested and charged with over 200 counts of computer theft, computer trespass, unlawful use of a computer and other related crimes connected with her employment.[2] The UCBR reasoned that the holding in *Preservation Pennsylvania* did not apply to this matter because the evidence that Employer sought to present was unrelated to the reasons for Claimant's discharge. Unlike the majority, I agree with the UCBR.

The employee in *Preservation Pennsylvania* was furloughed from her employment in November 1993 due to budgetary reasons, and the employer did not contest her application for benefits. Subsequently, the employer sought to introduce evidence, discovered in April 1994, that the employee had embezzled $40,000, thereby creating the budgetary problems that resulted in her unemployment. The employer asserted that it could not have discovered the employee's criminal misconduct earlier because the employee had concealed her theft.

In *Preservation Pennsylvania*, the court first recognized the general rule that an employer seeking to deny benefits on the grounds of willful misconduct must prove that the employee's misconduct was the actual reason for the employee's separation from employment. *Panaro v. Unemployment Compensation Board of Review*, 51 Pa.Cmwlth. 19, 413 A.2d 772 (1980). Although the stated reason for the employee's furlough was a budgetary issue, we

allowed the employer to present after-discovered evidence of the employee's criminal misconduct in response to the unusual facts presented. We stated our holding as follows:

> Thus where evidence of an employee's embezzlement of an employer's funds, or other criminal conduct committed against an employer *which causes the employee's unemployment*, is received within a reasonable time after the employee's separation and the employer promptly acts to contest a determination of eligibility for benefits, the Board is not deprived of authority to permit evidence of the after-discovered criminal conduct. The Board may thereafter reconsider the employee's entitlement to benefits in light of the after-discovered criminal conduct and terminate benefits if the employer sustains its burden of proof.

*Preservation Pennsylvania*, 673 A.2d at 1048 (emphasis added). We vacated the Board's decision and remanded the matter to the Board

> to conduct a hearing or to remand to the referee for a hearing to permit Preservation an opportunity to establish [the employee's] embezzlement of funds *and that the embezzlement caused Preservation's budgetary problems which led to its decision to furlough [the employee]. If the Board finds that [the employee's] embezzlement caused Preservation's budgetary problems*, the unemployment compensation benefits should be terminated and the fault overpayment issued by the Job Center reinstated.

*Id.* (emphasis added).[3] As articulated above, the holding in *Preservation Penn-*

---

**2.** Employer introduced evidence at the hearing before the referee reflecting that Claimant used a flex-card to pay for $6,000.97 in charges, although her contributions to Employer's flexible spending plan totaled only $1,500.00. However, Employer acknowl-

edged that this information was discovered after Claimant's discharge and was not related to the reasons for her termination. (R.R. at 22a.)

**3.** Inexplicably, the majority states that, "there is nothing in [*Preservation Pennsylvania*]

*sylvania* may be summarized as follows: the UCBR may consider after-discovered evidence that is not related to the reason *given* for the employee's discharge where the following criteria are satisfied: (1) the employee commits criminal conduct; (2) the criminal conduct causes the employee's unemployment; (3) the employer offers the evidence within a reasonable time; and (4) the employer acts promptly to contest the prior determination.

It is critical to note that, although the court in *Preservation Pennsylvania* characterized its ruling as an "exception," its holding *did not alter the employer's burden of proof*; instead, the plain language of this decision merely allows an employer to present after-discovered evidence that, if accepted, would meet its burden of proving that the claimant committed willful misconduct that caused her separation from employment.

As we did in *Preservation Pennsylvania*, the majority acknowledges that Employer's burden of proof is two-fold: "It is well settled that to disqualify an employee from receiving unemployment benefits, the employer must prove: (1) the employee was engaged in willful misconduct; and (2)

that the willful misconduct was the 'actual reason' or the 'cause' for the employee's separation from employment. *Gallagher v. Unemployment Compensation Board of Review*, 36 Pa.Cmwlth. 599, 388 A.2d 785 (1978)." (Majority op. at 687.) Nevertheless, the majority dismisses this well-settled principle of law, and, under the misapprehension that the court in *Preservation Pennsylvania* did likewise,[4] abolishes the second prong of an employer's two-part burden. As restated by the majority, an employer now is allowed "to turn the clock back and *substitute* after-discovered evidence *for whatever the 'actual reason'* was for the separation," (majority op. at 687–88) (emphasis added), if the employee concealed the misconduct while employed.[5] I believe that, by allowing an employer to change the reason for an employee's termination, the majority's holding conflicts with our decision in *Preservation Pennsylvania* as well as with decades of case law holding that an employer bears the burden of proving that the misconduct at issue was the actual reason for the employee's discharge. *See, e.g., Landy & Zeller, Attorneys at Law v. Unemployment Compensation Board of Review*, 110 Pa.Cmwlth. 183, 531 A.2d 1183 (1987); *Panaro*.

which suggests that its holding is limited to situations where the misconduct and the actual termination are interrelated." (Majority op. at 688.) I would suggest that the language in this carefully crafted holding speaks for itself. Moreover, I question whether it is legally sound to rely on the absence of language to support broadening the application of a factually distinguishable case.

4.  Indeed, in *Preservation Pennsylvania*, we repeatedly emphasized the relationship between the claimant's misconduct and her ultimate discharge from employment. In addition to the explicit language of our holding, we began our analysis with the observation that the employer's request for relief was premised, in part, upon its assertion that the claimant's misconduct *was the actual cause* of her unemployment. "Preservation argue[d] that had

the referee permitted it to cross-examine [the claimant] regarding her embezzlement and to present evidence in this regard, Preservation would have demonstrated that [the claimant] *was in fact dismissed for willful misconduct* and that she is consequently ineligible for benefits." *Id.* at 1047 (emphasis added).

5.  The majority frames the issue in the case as "whether the Claimant concealed from Employer criminal conduct which, had the Employer known, would have resulted in her discharge." (Majority op. at 688.) I submit that the majority's focus on the employee's concealment of her misconduct and its characterization of that concealment as a significant, even dispositive, factor is patently unreasonable; there can be no question that virtually *every* employee who commits criminal misconduct will attempt to conceal it.

Like the majority, I am discomfited by the notion that a claimant who commits a crime against her employer is not ineligible for unemployment benefits as a matter of law. Nevertheless, I believe it is our duty to be guided by the law, rather than emotion. Thus, although I agree that the legislature could not have intended that an employee should benefit from criminal conduct that was concealed by the employee during her employment, *Preservation Pennsylvania*, I believe that the majority's focus on this principle is misguided. The legislature never intended the Unemployment Compensation Law to be a response to criminal misconduct. Instead, punishment for criminal offenses is meted out in accordance with the Crimes Code, and, as the dissent in *Preservation Pennsylvania* observed, court-ordered restitution and other civil remedies are available to address harm to employers. I submit that those remedies adequately, and more appropriately, address the concerns that underlie the majority's analysis. In addition, it is beyond peradventure that the legislature does not intend the courts to ignore principles of substantive law and the concept of finality in order to avoid perceived injustice.

Moreover, I believe that once we extend the holding in *Preservation Pennsylvania* to factually distinguishable circumstances, as the majority does here, we embark down a slippery slope that eventually eliminates any basis for denying a request to consider after-acquired evidence. For example, I envision difficulty maintaining a distinction based on the criminal nature of a claimant's misconduct; how will we deny an employer the opportunity to present after-discovered evidence of a claimant's misconduct which, although not criminal, costs the employer a great deal of money or its good standing in the business community? How will we rationalize a distinction between misconduct affirmatively con-cealed by the claimant and misconduct that simply could not be discovered for a long period of time? And, to be sure, justice will require that we also allow claimants to present after-acquired evidence, perhaps establishing an employer's violation of a collective bargaining agreement or plans to relocate, which, had the same not been concealed by the employer, would have transformed a strike into a lockout or established necessitous and compelling reason for the claimant's voluntary quit. The arguments in all cases would be the same as that found adequate by the majority today: we had good reason to terminate employment but, through no fault of our own, we did not know it at the time.

Most important, I believe that the majority overlooks the many negative consequences of broadening the circumstances to which *Preservation Pennsylvania* may apply. Allowing employers to go back in time, based on their assertions that newly discovered evidence will establish grounds for disqualification, prejudices claimants, some of whom will have secured new jobs weeks or months earlier, and all of whom will be forced to defend against an assessment of fault overpayment. Certainly it can be anticipated that all claimants will be adversely affected; consider issues such as the availability of witnesses and other evidence that now may be within the employer's exclusive control. In light of the advantage to employers and the burden imposed upon former employees, I believe that the potential for abuse is great indeed. Moreover, there can be no doubt that expanding our prior holding will negatively impact the principles governing the finality of determinations and will reduce employers' incentives to promptly investigate and file timely appeals.

For these reasons, I would limit the applicability of *Preservation Pennsylvania*

to cases where all of the criteria set forth therein are met, including the requirement that the claimant's alleged criminal conduct have a causal connection to his or her unemployment.