IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Calvin Abercrombie,      :
           Petitioner      :
                   :
        v.                :    No. 849 C.D. 2020
                   :    Submitted: April 1, 2021
Unemployment Compensation      :
Board of Review,               :
           Respondent    :


BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON               FILED: July 21, 2021

       William Calvin Abercrombie (Claimant), *pro se*, petitions this Court for review of a July 29, 2020 Order of the Unemployment Compensation (UC) Board of Review (the Board) affirming the decision of the UC Referee (Referee) denying his claim for UC benefits. Claimant asserts that the Board erred because he was not disqualified from UC benefits under Section 402(e) of the UC Law.[1] Further, Claimant contends that his termination was in violation of the Bituminous Coal Mine Safety Act.[2] Additionally, Claimant argues that the Board's decision was invalid because none of the testimony given by his employer was supported by physical

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

[2] Act of July 7, 2008, P.L. 654, 52 P.S. §§690-10 - 690-708.

evidence of wrongdoing. Consolidated Pennsylvania Coal Company (Employer) enters the instant case as an intervenor. Upon review, we affirm the Board's Order.

## I.    Background

Claimant worked for Employer for a year and a half, up until his last day of work on February 8, 2020, as a full-time production and maintenance worker. Finding of Fact (F.F.) No. 1, Referee Decision/Order, 05/14/2020. During his employment, Claimant's duties included the performance of safety checks throughout the coal mine. F.F. No. 2. These safety checks are mandated per federal regulations.[3] F.F. No. 3.

When performing safety checks, the inspector, who in this instance was Claimant, is required to sign and date boards located throughout the mine confirming the date and time of the safety check. F.F. No. 4. An inspector is also responsible for addressing any deficiencies found during a safety check. F.F. No. 5. Safety checks are to be performed within a three-hour window of the beginning of an inspector's work shift. F.F. No. 3.

Employer has policies and work rules which provide that discipline up to termination from employment can ensue for violations of safety check requirements, such as falsifying or misrepresenting records. F.F. No. 6. Employer made all employees, including Claimant, aware of these job responsibilities and

---

[3] Federal regulations governing mine inspections require that when an inspector is performing a pre-shift safety examination:

> At each working place examined, the person doing the pre[-]shift examination shall certify by initial, dates, and time, that the examination was made. In the areas required to be examined outby a working section, the certified person shall certify by initials, date, and the time at enough locations to show that the entire area has been examined.

30 C.F.R. §75.360(f).

accompanying work rules. F.F. No. 7. Per the Certified Record, Claimant signed an acknowledgement and receipt of Employer's handbook on June 4, 2018, at the commencement of his employment. Certified Record (C.R.) at 76.

On February 8, 2020, Claimant was assigned the performance of a safety check prior to the start of the midnight shift, meaning that the check was required to be completed between 9:00 p.m. and midnight. F.F. No. 8. At 8:30 p.m., Claimant's section supervisor was sent to Claimant's work area to observe him performing his work duties. F.F. Nos. 9, 13. While observing, the section supervisor noted that Claimant was marking the date boards later than the actual time he was performing his duties. F.F. No. 10. Specifically, he was entering times on the date board that were one hour later than his visit to the worksite and the times entered allowed the record to show that he was performing the inspection within the allowable timeframe. F.F. No. 11. Further review of the date boards revealed that Claimant was entering times as 9:26 p.m. and later, while Claimant's section supervisor observed him making such entries at or around 8:30 p.m. F.F. Nos. 12-13.

Upon observing Claimant's inaccurate recording, on the evening of February 8, 2020, the section supervisor confronted Claimant, at which time he acknowledged what he did but declined to provide further explanation. F.F. Nos. 14-16. The section supervisor then escorted Claimant out of the mine and to his vehicle. F.F. No. 18. On February 10, 2020, Claimant participated in a meeting with Employer's representatives, during which he was discharged for failing to properly complete his duties and for falsifying records related to the February 8, 2020 safety inspection. F.F. No. 19.

3

On February 9, 2020, Claimant applied for UC benefits, and on March 4, 2020, the UC Service Center in Erie determined that he was ineligible for UC benefits under Section 402(e) of the UC Law.[4] C.R. at 29. On March 17, 2020, Claimant filed an appeal, and on May 4, 2020, a Referee conducted a hearing at which Claimant and three witnesses for Employer, accompanied by a non-legal representative, appeared. C.R. at 35, 107. On May 14, 2020, the Referee denied benefits pursuant to Section 402(e) of the UC Law. C.R. at 167-69. Claimant subsequently appealed to the Board, and on July 29, 2020, the Board affirmed the decision of the Referee. Bd. Order, 08/29/2020. Claimant now petitions this Court for review.[5]

## II. Discussion

Before this Court, Claimant asserts that he did not violate any employment rules so as to disqualify him from receiving UC benefits pursuant to Section 402(e) of the UC Law. Further, Claimant alleges that Employer did not provide documented evidence of any violated company policy or adverse behavioral issues that would legally prevent him from receiving UC benefits. Additionally, Claimant argues that he was acting in good faith on behalf of the Pennsylvania

---

[4] Section 402(e) of the UC Law reads:

An employe shall be ineligible for compensation for any week

. . . .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work.

43 P.S. §802(e).

[5] Our review is limited to discerning whether substantial evidence supports the Board's findings, whether the Board committed an error of law, or whether constitutional rights were violated. *Klampfer v. Unemployment Comp. Bd. of Rev.*, 182 A.3d 495 (Pa. Cmwlth. 2018).

4

Department of Environmental Protection (DEP) at the time the wrongdoing was alleged.[6]  Claimant also asks this Court to consider Section 511 of the Bituminous Coal Mine Safety Act,[7] as it has been "blatantly ignored" during his appeal process. Claimant's Br. at at 9.  The Board and Employer contend that the Board's findings that Claimant falsified records are supported by the credited testimony of Employer's witnesses, and, accordingly, Claimant committed willful misconduct, making him ineligible for UC benefits pursuant to Section 402(e) of the UC Law.

This Court's scope of review is limited to determining whether substantial record evidence supports the Board's findings of fact or the Board committed an error of law or violated its procedures or a party's constitutional rights. 2 Pa. C.S. §704.  Substantial evidence is "defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Peak v.*

---

[6] Employer's safety supervisor testified before the Board that DEP issued an administrative order revoking Claimant's credentials on April 9, 2020, in response to his violations related to the pre-shift examination on February 8, 2020.  C.R. at 126.  Thus, while Claimant notes his responsibilities pursuant to DEP's authority as support for his claims that he did not violate employment rules through his actions on February 8, 2020, Claimant was subject to discipline by DEP following the incident.  While we will not speculate as to the content of DEP's determination, we will not consider the instant case based on the prior or present status of Claimant's DEP affiliation.

[7] Section 511 of the Bituminous Coal Mine Safety Act, 52 P.S. §690-511, reads:

> If a superintendent receives information that any mine foreman, assistant mine foreman, mine examiner or mine electrician neglects duties or is incapacitated, the superintendent shall make a thorough investigation. If the superintendent finds evidence to sustain neglect or incapacity, the superintendent shall suspend the individual and inform the department.

References to the Bituminous Coal Mine Safety Act do not appear in the Certified Record, and prior to Claimant filing his brief with this Court, he did not explicitly raise this issue.  While Claimant alleges that the issue was "blatantly ignored," he has not articulated a violation under the statute throughout the appeals process, including before this Court, that may be properly considered.

*Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1387 (Pa. 1985) (internal quotation marks omitted). When substantial record evidence supports the Board's findings, they are binding on appeal. *Id.* "In reviewing a substantial evidence argument, this Court examines the evidence in the light most favorable to the prevailing party and gives that party the benefit of any inferences that can be logically drawn from the evidence." *Allen v. Unemployment Comp. Bd. of Rev.*, 189 A.3d 1128, 1133 (Pa. Cmwlth. 2018).

In the instant case, Claimant challenges whether Employer provided evidence of company policies that he violated, and thus, absent this evidence, challenges his ineligibility for UC benefits due to violation of employment rules under Section 402(e) of the UC Law. To meet its burden of proof in establishing willful misconduct in the violation of a work rule, an employer must establish the existence of the rule, its reasonableness, and the employee was aware of its existence. *Bishop Carroll High Sch. v. Unemployment Comp. Bd. of Rev.*, 557 A.2d 1141 (Pa. Cmwlth. 1989).

Before the Referee, Employer's section supervisor testified that he personally saw the date boards Claimant was initialing and dating and that Claimant falsified the times on those boards by approximately one hour. The section supervisor stated:

> Upon me [sic] walking over and checking the date board at the fresh air bed the time . . . on the board versus the . . . actual time of what it was was [sic] an hour difference and the same for the SES R cache. There was an hour difference in time . . . We proceeded in [sic] by checking all the date boards on the track from there up . . . and all of the date board[s] was [sic] reflecting an hour difference give or take.

C.R. at 133; Referee Hr'g Tr., 05/04/2020. The Board found this testimony credible, and testimony may be substantial evidence to support a finding. *Holt v. Unemployment Comp. Bd. of Rev.*, 840 A.2d 1071, 1072-73 (Pa. Cmwlth. 2004).

Also, Employer provided documentary evidence before the Referee, specifically a copy of its Employee Conduct Rules and Claimant's signed acknowledgment and receipt of such rules, that explicitly outline its work rules. *See* C.R. at 75-76. Employer's Employee Conduct Rules state, in relevant part:

> Observance of work rules is a requirement for good working relations. In order to minimize the occasions for discipline or termination, each of us should avoid conduct which violates reasonable standards including:
> . . . .
> 6. Falsifying or misrepresenting records.

C.R. at 75. Thus, Claimant was on notice of the potential penalties, including termination, associated with Employer's reason for his termination, namely falsifying or misrepresenting records.

Because the Board found the testimony of the section supervisor credible and Employer provided additional evidence of its work rules, the Board "adopt[ed] and incorporate[d] the Referee's findings and conclusions," which outline Claimant's falsification of mine inspection time reporting. Bd. Order, 08/29/2020. As these findings are supported by substantial competent evidence, they are binding on appeal to this Court. *See Peak*, 501 A.2d at 1387. While Claimant alleges that Employer did not provide evidence that he violated Employer's policies, this is simply not the case. Before the Referee, Employer provided testimony as to Claimant's violations that was subsequently deemed credible by the Board. On appeal, this Court will not disturb these credibility determinations. *See Klampfer*.

7

Section 402(e) of the UC Law specifically states that "willful misconduct" resulting in an employee's discharge from his employment will render him ineligible for UC benefits. This Court has defined willful misconduct as: (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; and (4) negligence indicating an intentional disregard of the employer's interest or the employee's duties and obligations to the employer. *Williams v. Unemployment Comp. Bd. of Rev.*, 926 A.2d 568, 571 (Pa. Cmwlth. 2007) (citing *Altemus v. Unemployment Comp. Bd. of Rev.*, 681 A.2d 866, 869 (Pa. Cmwlth. 1996)). To determine whether an employee's conduct amounted to willful misconduct, an evaluation must be made both as to the reasonableness of the employee's actions and the reasonableness of the employer's rules in light of all the circumstances, including the nature of the employer's business and its effect on the public. *Holly v. Unemployment Comp. Bd. of Rev.*, 617 A.2d 80 (Pa. Cmwlth. 1992).

In the instant case, Claimant failed to perform part of his job duties, specifically a pre-shift section examination of the coal mine and upon noncompletion, falsified and misrepresented mine records related to his duties. Examinations of the type at issue in this case are required by federal and state law to ensure early detection of hazardous conditions or violations to protect the safety of employees and the public. Therefore, by not properly completing his duties, Claimant potentially put the public, and other mine employees, at a significant safety risk.

Upon Employer's showing that Claimant's misconduct was willful, the burden shifted to Claimant to demonstrate he had good cause to violate Employer's

rules and federal and state regulations by not completing his mine examination. *See Gillins v. Unemployment Comp. Bd. of Rev.*, 633 A.2d 1150 (Pa. 1993). Not only did Claimant not provide good cause for his actions,[8] but upon questioning by his superiors about the events surrounding the February 8, 2020 incident, he did not offer an explanation. *See* F.F. Nos. 14-16.

Thus, the Board did not err in affirming the Referee's determination that Claimant is ineligible for UC benefits pursuant to Section 402(e) of the UC Law. Employer's rule requiring pre-shift section examinations of the coal mine was reasonable, and such examinations are mandated by federal and state law. Per the Referee's Findings of Fact, Claimant, and all employees, were made aware of these responsibilities. *See* F.F. No. 7. Further, in citing federal and state regulations before this Court and at previous stages in the appeals process, Claimant acknowledges that his neglected duties, that are the subject of the instant case, are required by federal and state authorities. In consideration of the reasonableness of Employer's rules and the effect of noncompliance on public safety and other employees, Claimant's actions constitute willful misconduct as contemplated within Section 402(e) of the UC Law.

---

[8] During the hearing before the Referee, Claimant indicated there was an "air exchange" scheduled for the end of the work shift on February 8, 2020, which would result in a scheduled evacuation, and thus he may not have been able to perform the mine examination in the prescribed time period. Referee Decision/Order, 05/14/2020, at 3. However, Employer witnesses confirmed that the air exchange evacuation would not have occurred until after the pre-shift examination was completed per state law. *Id.* In addition, there is no evidence that Claimant approached any of his superiors on the date in question to inquire about any concerns he may have had in that regard or any other with respect to his pre-shift examination. *Id.*

### III.  Conclusion

For the foregoing reasons, we affirm the Board's Order.

_____

J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Calvin Abercrombie,    :
                  Petitioner   :
                               :
        v.                     :    No.  849 C.D. 2020
                               :
Unemployment Compensation      :
Board of Review,               :
                 Respondent    :


# **O R D E R**


   **AND NOW**, this 21st day of July 2021, we **AFFIRM** the Order of the Unemployment Compensation Board of Review.


                              _____
                              J. ANDREW CROMPTON, Judge